ANDREW J. CARTAN et al., partners, &c., complainants-
respondents,

*v.*

ERNEST L. PHELPS et al., defendants-appellants.

[Submitted December 8th, 1919.   Decided March 1st, 1920.]

1. On appeal from a decree of the court of chancery great weight is
given to a finding upon a question of fact, because the chancellor, who
hears the case in the court below and sees the witnesses and hears them
testify, has better opportunities to judge their credibility than the re-
viewing court.  But that rule imposes no restraint on the power of the
reviewing court to ascertain by full investigation and analysis of the
evidence what the facts are, and whether the general finding is consistent
therewith.

2. It is permissible for a witness, in order to refresh his recollection,
to use a memorandum, made by another at his dictation, which he recol-
lects he saw made while the facts were fresh in his memory and re-
members that he then knew that the particulars therein mentioned were
correctly stated.

3. On appeal from a decree of the court of chancery, where the char-
acter of a party for truth and veracity is unimpeached, and his testimony
is uncontradicted, is not contrary to circumstances in evidence, and con-
tains no inherent improbabilities or contradictions which alone or in con-
nection with other circumstances in evidence excite suspicion as to the
truth of the testimony, it will be given effect.

On appeal from a decree of the court of chancery advised by
Vice-Chancellor Foster, and reported in *89 N. J. Eq. 599.*

*Mr. Jehiel G. Shipman* and *Messrs. Fort, Hunt & Shipman,*
for the appellants.

*Mr. Peter Bentley* and *Messrs. McCarter & English,* for the
respondents.

The opinion of the court was delivered by

TRENCHARD, J.

The bill in this case was filed to set aside a deed of conveyance made by the defendant Phelps to the defendant Wayland O. Bagley for lands located near Matawan, in this state—the ground of the relief sought being that the conveyance was made for the purpose of defrauding the complainant and other judgment creditors of Phelps.

The learned vice-chancellor reached the conclusion upon the proofs submitted at the hearing that the deed was made primarily to secure to Bagley the payment of an indebtedness of $1,200 due him from Phelps; and further, that the purpose of Phelps was, not only to secure this debt, but also to put his property out of the reach of other creditors. The vice-chancellor found that Bagley was not a party to the scheme to defraud the creditors of Phelps, and, therefore, advised a decree that he be permitted to hold this conveyance as security for his debt, which was adjudged to be $1,200; that the property be sold for the payment of that debt; and that what remained of the proceeds of the sale after such payment should be applied to the payment of the several judgment creditors of Phelps. *108 Atl. Rep. 114.*

On Bagley's appeal this court affirmed that decree except as to the amount of the indebtedness to Bagley. *89 N. J. Eq. 599.* After pointing out that the finding of the vice-chancellor as to such amount was based entirely upon the testimony of two witnesses who had no personal knowledge upon the subject except as it was told to them by Phelps, this court held that Phelps' admissions were not evidential against Bagley and that proofs should be taken as to the actual amount of this indebtedness.

When the case went back, this specific matter was referred to a special master to take additional testimony and certify that testimony to the vice-chancellor. Bagley was examined and testified (after having refreshed his memory since testifying at the original hearing) that the amount of the indebtedness was $4,400. The vice-chancellor, however, considered his testimony so meager and uncertain as to be unworthy of credit, and held that the proofs failed to establish "a greater indebtedness due the

defendant Bagley than the amount which the former decree awarded him," and advised that the terms of the former decree be carried into effect. It was decreed accordingly and Bagley appeals.

We are of the opinion, after full examination and reflection, that the appeal is well taken.

At the outset we remark that unless effect is given to some part of Bagley's testimony, the decree as to the amount of the indebtedness has no evidence to support it, since there was no other legal evidence upon that topic.

So, the question presented is whether we are justified in rejecting that uncontradicted testimony, as was done in the court below.

We are constrained to think that we are not.

On an appeal from a decree from the court of chancery great weight is given to a finding upon a question of fact, because the vice-chancellor, who hears the case in the court below and sees the witnesses and hears them testify, has better opportunities to judge their credibility than the reviewing court. But that reason does not obtain with full force in the present case because the testimony at the second hearing was taken before a master and certified to the vice-chancellor.

However, the rule giving great weight in the appellate court to the vice-chancellor's finding on a question of fact imposes no restraint on the power of the former to ascertain by full investigation and analysis of the evidence what the facts are, and whether the general finding is consistent therewith. *Riddle* v. *Clabby, 59 N. J. Eq. 573; affirmed, 46 Atl. Rep. 782.* Of course, the rule is different on appeal from an inferior law tribunal by way of writ of error, for in such case only errors of law are reviewed, and the determination of disputed questions of fact depending on the credibility of the witnesses is the exclusive function of the jury. See *Clark* v. *Public Service Electric Co., 86 N. J. Law 144; Schmidt* v. *Marconi Wireless Tel. Co., 86 N. J. Law 183.*

Now, in the present case, Bagley testified that at various times between 1908 and 1912, he loaned Phelps money, taking each time his promissory note or "I. O. U.;" that in 1913, when the

indebtedness amounted to about $3,000, he pressed Phelps for payment; that an accounting was had between them at the time and it was agreed that the indebtedness, including interest, then amounted to $3,675; that then Phelps proposed to convey to Bagley the land in question upon payment to him of the further sum of $1,000; that Bagley, with his wife, went and looked at the property, and accepted the proposition; that in April, 1913, the deed was drawn, was sent west for the signature of Phelps' wife, and was delivered to Bagley in November, 1913; that pursuant to such agreement, at various times between the making thereof and the delivery of the deed in November, Bagley paid Phelps by checks $400, $100, $125 and $100, and that the remainder of the $1,000, namely, $275 (by mutual agreement, apparently), was not paid; that thus by way of loans, interest and checks the amount of such indebtedness was $4,400.

We do not feel at liberty to disregard that testimony of Bagley. His character for truth and veracity was unimpeached. He was expressly acquitted by the vice-chancellor, at the end of the hearing, of any fraud in the transaction. His testimony as to the amount of the debt is not inherently improbable. He and Phelps were friends and were employed at the same place. He had ample means to make the loans and additional payments, and knew that Phelps owned the property in question and other property, and received a good salary. It is said to be improbable that he would have loaned $3,000 without security or other evidence of indebtedness. But he says he took notes for the loans. The fact that the notes were not produced at the trial is satisfactorily explained by his testimony that he gave them to Phelps when he received his deed four years before the trial, and we think that was not an unnatural thing for him to do. The fact that he produced no record of these loans is accounted for by the fact that he kept no books and had no bank account at that time. This may be said to be careless, but a careless attitude not infrequently suggests good faith.

We think that his testimony was reasonably consistent throughout, and is in harmony with the other circumstances in evidence. At the first hearing his testimony was given without the benefit of the memorandum to which we shall hereafter

refer. At that hearing he testified that the loans amounted to "something between $2,800 and $3,000," when, on his pressing for payment in 1913, a conveyance was proposed on payment of $1,000 additional, and that "the total indebtedness up to that time (of conveyance), including the $1,000 mentioned, would have amounted, with interest, to a little over $4,000, probably, $4,300 or $4,400." He further testified that about $800 only of the additional $1,000 was paid; that this was paid by four checks (he having then opened a bank account), and he produced one returned check for $400 dated April 15th, 1913, and one for $100 dated July 18th, 1913.

Before testifying at the second hearing he refreshed his memory as to the amount due him, and how it was made up, by inspecting a memorandum made at his dictation by Kenneth McEwen, his attorney, in New York City, in March, 1914, about five months after the delivery of the deed to him by Phelps, and at a time when, as he says, he recollects that the facts were fresh in his memory, and remembers that he then knew that the particulars therein mentioned were correctly stated. Of course, it was permissible under such circumstances for him to thus refresh his recollection. *State* v. *Dougherty, 86 N. J. Law 525; More-Jonas Glass Co.* v. *West Jersey, &c., R. R. Co., 76 N. J. Law 708; Meyers* v. *Weger, 62 N. J. Law 432.* This memorandum was made for the guidance of Bagley's attorney at the time a prior suit was brought by another creditor seeking to set aside this same conveyance as without consideration, which suit was afterwards discontinued. The attorney corroborates Bagley with respect to the fact that the memorandum was made, the time when it was made, and that it was inaccessible to Bagley at the first hearing by reason of the absence of his attorney who had possession thereof. The attorney also corroborates Bagley as to the fact of the existence of four checks given by Bagley to Phelps and returned, amounting to $725 (two of which were produced at the first hearing). He testifies that all four checks were left with him by Bagley at the time the memorandum was dictated, and that two were lost by him in course of preparation for the defence of the prior suit.

Where, as here, the character of a party for truth and veracity

is unimpeached, and his testimony is uncontradicted, is not contrary to circumstances in evidence, and contains no inherent improbabilities or contradictions which alone or in connection with other circumstances in evidence excite suspicion as to the truth of the testimony, it will be given effect.

The result is that Bagley is entitled to a decree that there is due him $4,400. He is not entitled to interest from the date of the conveyance to the date of the decree because we think the evidence justifies us in finding that the rents received by him are the equivalent of such interest.

The decree is correct in all other respects, but it will be reversed for the purpose of such modification as is required by the conclusion we have reached and expressed in this opinion.

The appellant is entitled to costs.

*For affirmance*—BLACK—1.

*For reversal*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, ACKERSON—13.