ELIZABETH TIERNEY, complainant-respondent,

*v.*

LILLIAN HOTZ, defendant-appellant.

[Argued May 26th, 1947.   Decided September 25th, 1947.]

*Messrs. Milton M. & Adrian M. Unger,* for the complainant-respondent.

*Messrs. Stein, Stein & Hughes,* for the defendant-appellant.

The opinion of the court was delivered by

WELLS, J.

This is an appeal from a decree entered in the Court of Chancery directing that Lillian Hotz, the defendant-appellant, pay to her mother, Elizabeth Tierney, the complainant-respondent, the sum of $8,990 together with costs and counsel fee.

The complainant is a widow of some ninety years, partially paralyzed and faulty in memory. She has been virtually confined to her home for some years and has relied on certain of her nine children to purchase her necessities and assist her in the conduct of her business affairs. Her sources of support have been a savings account in the Mutual Savings Fund Harmonia, of Elizabeth, and rentals from a two-family house adjacent to her home.

The defendant is a daughter of the complainant who lived near her mother. Having been separated from her husband, and later widowed, with her children away from home in military service, she apparently devoted some part of each day to calling upon her mother and attending to her needs. By virtue of certain powers of attorney executed by the complainant the defendant was empowered to make withdrawals from her mother's savings account and to enter her mother's safe deposit box. The defendant was also called upon from time to time to make out receipts for payments of rentals.

The bill of complaint charges the defendant with receiving and holding certain funds belonging to the complainant, and sought an accounting of such funds and payment of the amount found due and owing on such accounting. Funds from three separate sources are the subject of this controversy; (1) withdrawals from the savings account in the amount of $9,600; (2) a cash sum of $4,990 entrusted to the defendant for safekeeping; (3) rentals of an unspecified amount. The

Vice-Chancellor rightly found that the complainant's proofs failed as to the matter of the rentals and they will not be considered further in this opinion. However, the Vice-Chancellor did find that the defendant was chargeable for $4,000 of the withdrawals from the savings account and for the entire sum of $4,990 alleged to have been entrusted to her care. Thereupon a decree was entered for the total amount of $8,990 and it is from such decree that this appeal is taken.

No questions of law are presented for the consideration of this court, but it is contended that the decree is not justified by the evidence adduced below. "On an appeal from a decree from the Court of Chancery great weight is given to a finding upon a question of fact, because the Vice-Chancellor, who hears the case in the court below and sees the witnesses and hears them testify, has better opportunities to judge their credibility than the reviewing court. * * * However, the rule giving great weight in the appellate court to the Vice-Chancellor's finding on a question of fact imposes no restraint on the power of the former to ascertain by full investigation and analysis of the evidence what the facts are, and whether the general finding is consistent therewith." *Cartan* v. *Phelps, 91 N. J. Eq. 312; 109 Atl. Rep. 291.*

Two factors in this case create considerable difficulty in arriving at a true evaluation of the testimony presented. In the first place, it is apparent that the complainant had no understanding of the nature and purpose of the proceedings which she had invoked. It is also apparent that her memory of pertinent events, actions and statements was so hazy as to be almost unreliable. In the second place, it is evident there was bitter feeling between the children to the extent that their testimony was tempered by distrust and accusation. We are inclined to agree with the Vice-Chancellor's conclusion in an unpublished memorandum that the complainant was seeking to restore good will among her children and that the defendant's sisters were actually the persons who were pressing this suit.

Faced with this situation, it becomes particularly important that all of the oral testimony be weighed most objectively and

tested by the unprejudiced documentary evidence which was available. At the same time, however, the complainant bears the burden of proof and carries the initial burden of bringing forth the evidence to substantiate the charges made. It is upon these bases that this court has reviewed the evidence and the conclusions which the Vice-Chancellor drew therefrom.

With respect to the withdrawals from the savings account, it appears that the defendant was given a power of attorney on January 31st, 1944, and as of the same date a previous power of attorney to her brother, John Tierney, was revoked. For some years prior to this date, monthly withdrawals from this account had been made in the amount of $100. In February, 1944, a further $100 was withdrawn, but from March, 1944, through July, 1945, withdrawals were made at the rate of $500 per month. Thereafter, from August, 1945, through December, 1945, a monthly amount of $200 was withdrawn. Thus, for the period of time between the execution of the power of attorney and the end of 1945 there were total withdrawals of $9,600.

In her testimony the defendant admitted making these withdrawals, but stated that they were made at her mother's direction and that all of the moneys were delivered to her mother. When asked about the increase in monthly amounts from $100 to $500 and later $200, she stated that this was done in accordance with her mother's instructions. She said that her mother used her money to buy food and pay for the running expenses of the home; and she also said that her mother was accustomed to making gifts of money to her various children with the admonition that these gifts were not to be revealed to the other brothers and sisters. Defendant claimed to have been given a total of $2,000, and her brothers, John and Matthew, in their testimony, admitted receiving gifts in varying amounts.

It appears that prior to March, 1944, the complainant was supporting herself on savings withdrawals of $100 per month plus the cash paid for rentals. It further appears that there was no decrease in the rentals during the months subsequent to February, 1944. On the other hand, there is no evidence of increased expenses which had to be met by the complainant

118

subsequent to February, 1944. The defendant stated that her mother was accustomed to living simply and, to the defendant's knowledge, her mother did not leave her home during 1944 and 1945.

We think that the Vice-Chancellor was justified in finding that the normal monthly living expenses of the complainant did not exceed $100 plus the amount of rentals received, and that there was no marked increase in such expenses during 1944 and 1945. Under such circumstances we believe that the records of increased withdrawals admitted by the defendant from March, 1944, through December, 1945, placed a burden upon the defendant of bringing forth evidence to explain and justify her action. We further believe that the Vice-Chancellor was correct in holding that the defendant did not meet this burden, and that he was fair in allowing her credit for $2,300 as the necessary living expenses of the complainant and $3,300 as proper gifts by the complainant to her children. We find, therefore, that the defendant was properly held accountable and chargeable for $4,000 of the $9,600 withdrawn from the complainant's savings account from January 31st, 1944, through December, 1945.

As to the sum of $4,990 alleged to have been entrusted to the defendant there is much conflicting testimony. It does appear that sometime prior to 1941 the complainant gave the defendant a bundle of paper currency with the request that she keep it for her. This bundle was later returned by the defendant to the complainant unopened, and it then found its way into the safe deposit box of a son, John Tierney. On July 2d, 1941, another son, Joseph, drove John to his bank, and thereupon the bundle containing $4,990 was taken and delivered to the complainant at her home. There were also present the defendant and a sister, Mrs. O'Brien. Joseph started to count the money and then laid it on his mother's bed. From that point on the stories differ, but whatever happened, it does appear that no one was apparently concerned about the whereabouts of this money until shortly before this suit was started in the year 1946.

The defendant testified that she did not touch the money on July 2d, 1941, nor did she know anything of its where-

abouts thereafter. Joseph testified that he did not see the money after he laid it on the bed. John testified that he counted $4,990, gave it to his mother and did not see it again. Mrs. O'Brien, admittedly at odds with her sister, the defendant, testified that the defendant "scooped up" the money and took it into the kitchen, but further stated that she didn't see the money again or inquire as to its whereabouts. John and two sisters, Mrs. Lawless and Mrs. Burns, testified that their mother had said, in the presence of the defendant, that she and the defendant had put the money in the complainant's safe deposit box. Both Mrs. Lawless and Mrs. Burns were shown to have bitter feeling against the defendant. As a further complication the complainant, when questioned during the hearing concerning the disposition of this money, replied, "I took that out myself and spent it."

In the light of this contradictory testimony any finding had to be based upon a decision as to the witnesses entitled to belief. The Vice-Chancellor chose to believe the defendant's sisters, although he was also convinced of their bitter feeling. At the same time he chose to disbelieve the defendant, although we do not find that she, any more than the others, gave testimony which was "inconsistent with the common principles by which the conduct of mankind is naturally governed." *Riehl* v. *Riehl, 101 N. J. Eq. 15.* It is also interesting to note that the Vice-Chancellor gave the defendant full credit of $2,000 as gifts from the withdrawals of $9,600, although this could only be done on her own unsupported testimony.

The Vice-Chancellor relied on two factors other than oral evidence for his finding against the defendant. It appears that on July 2d, 1941, on the same day that this $4,990 was taken from John Tierney's safe deposit box, another safe deposit box was rented in the name of the complainant, and the defendant was given a power of attorney to enter such box at her will. From this the Vice-Chancellor found that this money was placed in the complainant's box on July 2d, 1941, and that the defendant, by the power of attorney, later entered the box from time to time and dissipated the fund.

Mr. Edward Cohen, who had been complainant's legal ad-

visor for many years prior to the institution of this suit, was called as a witness for the defendant. He testified that toward the end of May, 1941, after a conference with all of the complainant's children, he had advised complainant to get a safe deposit box as a depository for her legal papers. Approximately one month later the complainant rented the box in question, and there is direct proof that it contained important papers. This may well account for the renting of the safe deposit box on July 2d, 1941, and there is no evidence that the $4,990 was placed in this box on that date or at any time thereafter, nor that defendant ever withdrew any moneys from the box. Our consideration of this and the other evidence leads to the conclusion that the Vice-Chancellor's finding was based upon an assumption rather than a reasonable presumption sufficient to charge the defendant with wrongdoing.

The other factor relates to the pleadings. The bill of complaint charged that on July 2d, 1941, the complainant turned over to the defendant the sum of $5,000 which she had refused to return. In answer, without questioning the date, defendant admitted receiving the money but alleged that she returned it when the complainant so requested. By technical construction the defendant might be held to have admitted that she returned these moneys after July 2d, 1941. In her testimony, however, she admitted the receipt and proved the return of the money at a time prior to the specific date set forth in the bill. We do not believe that the defendant should be prejudiced to her loss because her answer was not complete in stating that the receipt and return took place before July 2d, 1941. The same paragraph of the answer denied that the defendant was then holding any moneys of the complainant.

As indicated above, the complainant was required to bear the burden of proving that the defendant was accountable for this sum shown to be $4,990. We do not find that she successfully met this burden of proof, and we think the Vice-Chancellor erred in holding the defendant accountable for this fund.

One further point requires consideration. By a special defense the defendant pleaded a written release from the com-

plainant of all claims and obligations. It appears that on March 1st, 1946, shortly after the filing of the bill of complaint, the complainant signed a paper which purported to absolve the defendant of holding any of her moneys improperly, and which also purported to "withdraw any complaint in Chancery." This paper was apparently prepared by Joseph Tierney and signed at his request, although this took place over the protests of Mrs. Lawless and Patrick Tierney who were then present.

A review of the pertinent testimony and a deposition of the complainant clearly indicates that the complainant did not understand the meaning and the effect of the paper which she signed. Whatever might have been her feelings and intentions at that moment, which was fraught with considerable confusion, there was no cessation of the proceedings in Chancery, and we do not believe that this paper was sufficient to grant the absolution which defendant claims.

For the reasons stated above the decree of the Court of Chancery is modified to the extent that the defendant is held accountable for the total sum of $4,000 rather than $8,990, with costs and counsel fees as awarded.

*For affirmance*—Donges, Heher, Colie, JJ. 3.

*For reversal*—Wachenfeld, McGeehan, JJ. 2.

*For modification*—The Chief-Justice, Bodine, Eastwood, Burling, Wells, Dill, Freund, McLean, JJ. 8.