MARY CAPOZZOLI, PETITIONER–APPELLANT, v. VINCENT
CAPOZZOLI, DEFENDANT–RESPONDENT.

Argued February 7, 1949—Decided March 14, 1949.

Mr. *Nicholas A. Ciufi* argued the cause for petitioner-appellant (*Mr. David Weinick* on the brief).

Mr. *Eugene A. Liotta* argued the cause for defendant-respondent.

The opinion of the court was delivered by

WACHENFELD, J. The decision here rests primarily upon the credence to be given to the testimony of the wife and husband as their respective charges and denials of domestic misconduct are paraded for judicial determination on the wife's petition for a divorce on the ground of extreme cruelty.

The court below doubted the veracity of the wife's story and pointedly disposed of it by saying:

"Having observed the wife during the course of her testimony and having heard and reread the evidence, I have come to the conclusion that her testimony is highly exaggerated and reflects the animus, lack of regard and absence of love and respect for her husband

which she admits was present almost from the inception of their marriage and is the result of what I conceived to be almost a rabid effort and determination to rid herself of the defendant."

And again:

"I am satisfied that the allegations of the complaint and the testimony of the plaintiff reflects fancied grievances testified by her in an exaggerated manner. I attached very little credence to any statement made by her as to a substantive allegation of the complaint * * * "

The husband's version touched a more responsive chord and was somewhat kindly catalogued as follows:

"In summing up and evaluating the testimony of the witnesses I was greatly impressed with the testimony and appearance of the defendant himself. He appeared to the court as being an industrious foreigner, perhaps not too highly educated but yet not illiterate, whose primary interest in life was to keep his home together, educate his children and maintain his family in a respectable manner in the small community in which they lived in Berkeley Heights, New Jersey."

The inevitable result of these conclusions was the denial of the divorce prayed for, from which decision the wife prosecutes this appeal.

The parties were married in 1926, at which time the appellant was sixteen years of age and the respondent twenty-six. They have two children, a daughter twenty and a son eighteen years of age. They lived together until February 1947, when the wife separated from her husband as a result of an incident which will be referred to more fully hereafter.

The principal complaint is the alleged unreasonable demands for sexual intercourse without regard to the wife's physical condition, which continued, she asserts, without abatement or variation during the entire span of twenty years of their married life and until separation. She also, in a supplemental way, charged her husband with assaults, name-calling and excessive drinking.

As to the excessive and constant sex demands, suffice it to say that in addition to the emphatic denial of the husband, a lack of corroboration and the adverse conclusions of the Advisory Master below, the narrative submitted is reflected unfavorably when considered with the admitted fact that the par-

ties continued to live together and cohabit until the time of the final breach and separation.

As to the assaults, one occurred in 1939, when the appellant says the respondent struck her, and the other took place eight years later at the time of the parting as hereinafter mentioned. The name-calling was infrequent and reciprocal. The proof as to excessive drinking was lacking.

As to what occurred in February 1947 might best be left to the appellant's own words:

"He got hold of me and pushed me into the bedroom and punched the back of my head and pushed me against the door. He pulled me on the bed and my son came and separated us."

There is some corroboration given by both children but such an isolated incident is not sufficient to constitute extreme cruelty justifying the desertion by the wife.

The question of credibility is pre-eminently one for the Advisory Master to decide in cases of this kind. *Grewe v. Grewe,* 138 *N. J. Eq.* 296 *(E. & A.* 1946*).* On appeals from decrees in the old Court of Chancery great weight is given to the finding upon questions of fact made by the court below because it hears the case, sees and observes the witnesses and hears them testify and has better opportunities to judge their credibility than the reviewing court. *Cartan v. Phelps,* 91 *N. J. Eq.* 312 *(E. & A.* 1920*).*

This reasoning is particularly applicable to the case *sub judice* as the evidence below is sketchy, uninformative and general, making it unusually difficult to evaluate.

Although the appellant testified that she underwent an operation for internal injuries, there is no explanation of what the injuries were or what occasioned them; nor is the fact that she was confined to a hospital and treated by a doctor for nerves and headaches connected in any wise with the acts of which she complains and which are made the foundation of her cause. The record is barren of proof that her health was endangered or her safety jeopardized as alleged in her petition and required by the law prevailing in this State. Two brief but typical statements taken from her testimony are examples

indicating why the proof submitted fails to fulfill the prerequisites required in our rule of extreme cruelty:

"Q. How did your husband treat you shortly after you were married? A. He abused me with sexual intercourses at all times.

\*  \*  \*  \*  \*  \*  ·\*  \*  \*  \*  \*  \*

"Q. Did that happen every night of your married life or would that be at different intervals? A. If I would refuse him to have intercourse with him he would bribe me with money."

■■ The rule is repeated with slightly varying language many times from the case of *English v. English, 27 N. J. Eq. 579 (E. & A.* 1876*),* to *Stutz v. Stutz, 139 N. J. Eq. 385 (E. & A.* 1947*).* If it is apparent that the petitioner's life or health will be endangered or that her physical well-being will be impaired to an injurious degree, it is extreme cruelty within the meaning of our divorce act. In this respect the appellant has failed to meet the burden of proof placed upon her. There was no evidence that she was deleteriously affected by the acts complained of. The conclusions of the court below are in accord with our conception of the testimony presented.

■ There remains the query as to whether or not error was committed in the exclusion of the questions propounded to the mother and sister of the appellant attempting to elicit statements made by the wife in reference to certain occurrences in her marital relationship. The question to the mother was:

"Q. Did she tell you how she had gotten those marks? A. Yes sir.
"Q. What did she tell you?"

The question to the sister was:

"Q. Did your sister ever speak to you about matrimonial difficulties or her domestic life with her husband? A. Yes, she did.
"Q. What did she tell you?"

The answers to both questions were excluded by the Advisory Master on the doctrine of *Haskell v. Haskell, 99 N. J. Eq. 399 (E. & A.* 1926*),* and *Franklin v. Franklin, 140 N. J. Eq. 127 (E. & A.* 1947*).*

The testimony proffered was clearly not within the exceptions as outlined in those cases and, being an attempt to corroborate

the appellant's cause by self-serving declarations and hearsay testimony, was properly excluded.

The decree will accordingly be affirmed.

*For affirmance:* Justices HEHER, WACHENFELD, BURLING and ACKERSON—4.

*For reversal:* Chief Justice VANDERBILT and Justice CASE —2.