24 N.J. Super. 473 (1953)
94 A.2d 863
OLIVE MARIE GIBBS GILBERT, PLAINTIFF,
v.
LINDLEY FRANKLIN GILBERT, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided February 4, 1953.
*474 Mr. Frederick English, attorney for plaintiff.
EWART, J.S.C.
This is a suit for divorce for constructive desertion founded upon the defendant's alleged acts of extreme cruelty which compelled the plaintiff to separate herself from him. The complaint was filed March 28, 1952. *475 Defendant, who was served personally with process at Trenton on May 19, 1952, failed to answer and his default was entered July 3, 1952. Proofs were heard ex parte December 8, 1952 and the deposition of Rev. Samuel Steinmetz, an Episcopalian minister, who was ill and unable to appear in court, was taken by the plaintiff at Trenton on January 17, 1953, pursuant to an order had for that purpose.
The complaint charges the defendant with a course of cruel treatment towards the plaintiff commencing November 1, 1947 and continuing to December 10, 1949 when, she says, she was compelled to leave the defendant, and consists of the following acts as enumerated in the complaint:
(1) In July 1948 defendant removed plaintiff and their child to a remote, isolated, and unsanitary habitation in San Joaquin Valley, California. He was frequently away on business trips for long periods during which she and the child were left alone, by reason whereof she suffered extreme apprehension and fear for the health and safety of herself and child.
(2) Defendant treated her more as a servant than as mistress of the home and by his frequent absences and omissions she was forced to perform hard labor about the home to the detriment of her health.
(3) Defendant showed a lack of affection and concern for the welfare of their child in that, on one occasion on October 30, 1949, the infant child wandered perilously near the brink of a deep excavation and when the plaintiff screamed a warning to the defendant, he being nearer the child than she, he told her to get the child and exhibited no concern for the child's safety in view of the imminent danger, as a result of which the plaintiff suffered loss of appetite, loss of sleep and mental agony over the child's narrow escape.
(4) During the months of April, May and June 1949, in the presence of the plaintiff, defendant exhibited revolting and extreme cruelty (no details given) towards animal and wild life, as a result of which she was rendered sick and nauseated.
*476 (5) During the months of November and December 1947, January, March, April, May and December 1948, and May and November 1949, defendant was guilty of extreme cruelty towards the plaintiff in that he subjected her, against her will, to gross abuse of marital rights by compelling her to submit to oral intercourse which caused her extreme mental agony, undermined her health, and made her marriage unendurable.
The complaint charges that by reason of the course of cruel treatment to which plaintiff was subjected by the defendant, as aforesaid, her health was impaired; her life was rendered wretched and miserable; she was incapacitated from performing her duties as a wife; and that, if she be compelled to remain subject to the control of the defendant, her health will be further impaired and her life will be rendered so wretched and miserable as to completely incapacitate her from performance of her matrimonial duties.
I find from the proofs submitted that the parties were married March 16, 1947 at Merced, California; that they cohabited together in California until December 10, 1949; that one child, a daughter now four years of age, was born of the marriage and is in the custody of the plaintiff; that the plaintiff left the defendant in California December 10, 1949 because of his alleged course of cruel conduct towards her; returned to her mother in Trenton, N.J. on or about that date; and has resided in Trenton continuously since on or about December 10, 1949. I find that the date and fact of marriage as alleged in the complaint; continuous bona fide residence of the plaintiff in Trenton, New Jersey from about December 10, 1949 to the date of hearing in this case; and that the parties have been living separate and apart and have not resumed cohabitation since December of 1949, have all been proved and adequately corroborated by the proofs offered.
And the plaintiff's testimony respecting the unnatural sexual practices forced upon her by the defendant, of which there is no direct or express corroboration, I find sufficient, *477 if believed and corroborated, to have justified the plaintiff in separating herself from the defendant and to make him guilty of the constructive desertion for which a divorce is sought in this suit. 11 N.J. Practice (Herr), sec. 763.
At the trial, plaintiff's testimony generally supported the charges in her complaint. The charges of extreme cruelty enumerated in paragraphs 1, 2, 3 and 4 above are insufficient in my opinion to make a case of extreme cruelty entitling the plaintiff to a divorce. In any event, while the plaintiff testified to the occurrence of those events, her testimony in that respect is without corroboration.
Respecting the charge of gross abuse of marital rights enumerated in paragraph 5 above, the plaintiff's testimony supported those charges and she further testified that immediately upon her arrival from California on or about December 10, 1949 she confided in her mother, Helen Gibbs Briggs, with respect to those matters and told her mother of the abuses to which she had been subjected and which caused her to leave her husband.
Plaintiff's mother, Helen Gibbs Briggs, as well as the plaintiff's grandmother, Olive B. Coburn, by their testimony corroborated the fact of the plaintiff's residence in Trenton continuously since on or about December 10, 1949, and the fact that plaintiff and defendant had not cohabited since the date mentioned. In addition thereto, plaintiff's mother testified that upon plaintiff's arrival from California in December of 1949 she, the plaintiff, was greatly changed from what she had been before her marriage; that she was very thin, pale, that her eyes were dull, her neck cords stood out, her lips were distorted, that there was a great mental change for the worse, that she was absent-minded and shy and refused to see or associate with other people. And the mother further testified that the plaintiff has now greatly changed for the better; that she is now more like her normal self before marriage; and that upon the plaintiff's arrival from California in December of 1949 the plaintiff related to her mother in detail the abnormal sexual practices to *478 which she was subjected by the defendant as being the reason she, the plaintiff, was compelled to leave the defendant. And plaintiff's mother testified that she advised the plaintiff to consult a physician and that the plaintiff did shortly thereafter consult Dr. Barney Lavine of Trenton. The plaintiff's mother did not testify that plaintiff requested her to intercede with the defendant with a view to bringing about a reconciliation between the parties, nor did plaintiff's mother testify that she ever did attempt or get in contact with the defendant.
Dr. Barney Lavine of Trenton testified that he was first visited by and treated the plaintiff on January 24, 1950; that he found her to be in a nervous condition, complaining of inability to sleep, loss of appetite, and undue fatigue; and that she was in a depressed mental state. She visited Dr. Lavine on four different occasions. He prescribed sedatives, vitamins, etc., to build her up and he testified that she is now greatly improved from the condition in which he found her in January of 1950; that her weight has increased from 127 1/2 pounds to 141 pounds; that her color is better; that her nervousness and tremors have disappeared; that her state of depression has disappeared and that her mental attitude is now satisfactory. And the doctor further testified that unnatural sexual practices such as those testified to by the plaintiff could have caused the nervous condition and depressed state of mind in which he found her in January of 1950; that her health was impaired at that time; and that, in his opinion, a further continuance of such unnatural practices would further endanger her health and even her life.
The deposition of Dr. Steinmetz, taken January 17, 1953, adds little to the plaintiff's case as made out by the other proofs. He testified that he had been acquainted with the plaintiff for about ten years; that she discussed her marital difficulties with him on several occasions after she left her husband in California in December 1949; that she told him *479 of having separated herself from her husband and, as he remembers:
"made mention of incompatibility and conditions that were most objectionable. In other words, they just couldn't get along with each other. Certain things were forced upon her that were of an unnatural nature."
The doctor further testified that the plaintiff asked him to talk to her husband; that he did have a talk with the defendant who visited him; that his talk with the defendant was after the divorce papers had already been served upon the defendant; that his talk with the defendant was on the basis of a friendly interview of a person that has a problem and that they just had a general conversation. The doctor said he was not quite sure what the purpose was of having him meet the defendant, but that he assumed:
"if I would meet him and talk with him I would be able to perhaps help to bring about a better understanding, might be able to straighten something out in their lives. And I didn't seem to be able to get anywheres in the conversation at all. He seemed to be extremely negative."
For the plaintiff to succeed in this suit, not only the marriage and requisite residence, but also the cause of action itself, must not only be proved but must be corroborated. 11 N.J. Practice (Herr), sec. 1378; Lasker v. Lasker, 91 N.J. Eq. 352 (Ch. 1920).
Plaintiff's proofs contain no direct or express corroboration of her testimony with respect to the sexual abuses to which she was subjected, unless it may be said that the testimony of her mother, Helen Gibbs Briggs, or of Dr. Steinmetz, can be said to constitute corroboration. Plaintiff urges that the testimony of her mother, who repeated what the plaintiff had told the mother respecting the defendant's unnatural sexual practices, should be admitted as satisfactory corroboration under the rule laid down in Haskell v. Haskell, 99 N.J. Eq. 399 (E. & A. 1925); Franklin v. *480 Franklin, 140 N.J. Eq. 127 (E. & A. 1947); Capozzoli v. Capozzoli, 1 N.J. 540 (1949); and Sabia v. Sabia, 16 N.J. Super. 273 (App. Div. 1951). Generally, of course, such self-serving declarations, in the nature of hearsay, are excluded for obvious reasons. However, there are circumstances, as indicated in some of the cases last cited, where such testimony is admitted for the purposes of corroboration. But there are two prerequisites to the admission of such hearsay self-serving declarations for the purposes of corroboration, viz., (1) extreme closeness of friendship between the plaintiff and the person to whom such confidences are related, and (2) circumstances indicating a desire of the plaintiff to obtain assistance in effectuating a reconciliation. Franklin v. Franklin, supra; Capozzoli v. Capozzoli, supra. In the case at bar, while there was, no doubt, extreme closeness of friendship between the plaintiff and her mother, to whom she returned in December 1949, there is no proof of circumstances indicating a desire on the part of the plaintiff to obtain the assistance of her mother in effectuating a reconciliation. Indeed, the indications are quite to the contrary. There is no proof indicating that plaintiff desired a reconciliation with the defendant, nor that she requested her mother to get in touch with the defendant with a view to reconciliation, nor did the plaintiff's mother testify that she ever sought to communicate with the defendant or had any intention of so doing; and the same thing may be said generally respecting the testimony of Dr. Steinmetz. He did talk with the defendant, but only after the suit for divorce had already been instituted and process served upon the defendant. The doctor was uncertain as to what purpose was to be served in having him meet with the defendant, and there is no proof indicating that plaintiff desired or was seeking a reconciliation with her husband through the services of Dr. Steinmetz.
I feel constrained to reject the testimony of both the plaintiff's mother and of Dr. Steinmetz as corroborating evidence insofar as they attempt to repeat what the plaintiff *481 told them as to the unnatural sexual practices to which she was subjected by the defendant.
True it is that direct, express corroboration in such a case as this is next to impossible because the acts complained of are of such a nature as would necessarily be committed in private and not publicly in the presence of witnesses who might later be called upon to offer corroborating proof. And in such hardship cases, express categorical corroboration is not required because of the inherent difficulties of producing such proof, but under the rule of constructive corroboration mentioned in Lasker v. Lasker, supra, corroboration may be supplied by surrounding facts and circumstances adequately proved and established. Orens v. Orens, 88 N.J. Eq. 29, at 34 (Ch. 1917); Rogers v. Rogers, 89 N.J. Eq. 1, at 3 (Ch. 1917); Parmly v. Parmly, 90 N.J. Eq. 490, at 498 (Ch. 1919); Lasker v. Lasker, supra; Meek v. Meek, 92 N.J. Eq. 23, at 24 (Ch. 1921); Grobart v. Grobart, 107 N.J. Eq. 446 (Ch. 1931), affirmed 109 N.J. Eq. 129 (E. & A. 1931); Restaino v. Restaino, 110 N.J. Eq. 563, at 565 (E. & A. 1932); Sabia v. Sabia, 16 N.J. Super. 273 (App. Div. 1951).
In the absence of direct or express testimony corroborating the plaintiff's charge against the defendant, are there surrounding circumstances, adequately established, to satisfy the rule requiring corroboration of the very essential point of whether or not a cause of action exists in this suit? Both the plaintiff's mother and Dr. Lavine testified to the extremely poor physical condition, highly nervous state, depressed state of mind and impaired health in which they found the plaintiff upon her separation from her husband and return to Trenton at the end of 1949; and that both her physical health, condition of nerves, and mental outlook have greatly improved since she has been out from under the jurisdiction of and away from the presence of her husband. And Dr. Lavine expressed the opinion not only that the practices testified to by the plaintiff could have caused the nervous condition and depressed state of mind in which *482 he found the plaintiff in January of 1950, but also that a continuance of such unnatural practices would have further endangered the plaintiff's health and even her life. In this case the defendant was served personally with process and with a copy of the complaint. The nature of the charge made against him by the plaintiff is such that, if untrue, would call for a vigorous denial by a normal man. While the failure of the defendant to answer the complaint or to controvert the charge made against him does not constitute corroboration of the plaintiff's case, nor entitle her to a judgment, nevertheless such a default in the circumstances of this case is not without its significance. 11 N.J. Practice (Herr), sec. 1395.
Because of the inherent difficulties of producing direct and express corroborating proof in this case, the plaintiff is not to be held to that degree of corroboration required in the ordinary case where such corroborative proof should be available. 11 N.J. Practice (Herr), sec. 1378. Disregarding entirely the testimony of the plaintiff's mother where she repeated the story related to her by the plaintiff, and also disregarding the testimony of Dr. Steinmetz as to what the plaintiff told him, I conclude that the testimony of the plaintiff's mother and of Dr. Lavine have supplied the surrounding circumstances necessary to sufficiently corroborate the plaintiff's proofs and to satisfy me of the proof of her charge of unnatural sexual practices made against her husband, the defendant. The rule of corroboration only requires that belief in the truthfulness of the plaintiff's case must find support in the testimony of others, or of surrounding circumstances adequately established. I consider this requirement has been met in this case.
Judgment will accordingly go for the plaintiff who will also be granted custody of the child of the marriage, subject to reasonable right of visitation by the defendant.