Reid *v.* Reid.

## REID *vs.* REID.

1. Refusal by a wife of marital intercourse with her husband does not justify him in deserting her.

2. When in a suit for divorce adultery is pleaded in recrimination, the acts of adultery must be designated and specified in the same manner required in a bill or petition for divorce for adultery.

3. A charge of adultery pleaded in recrimination as a bar to divorce, must be sustained by other proof than the unsupported evidence of the defendant pleading it.

Reid *v.* Reid.

This cause was argued on final hearing, upon bill, answer, and proofs.

*Mr. J. Parker*, for complainant.

*Mr. Leupp*, for defendant.

THE CHANCELLOR.

The suit is for a divorce on the ground of desertion. The bill was filed in November, 1865, and charges desertion from March 1st, 1862, until the commencement of the suit. The facts admitted by the defendant in his answer, and in his testimony, when sworn as a witness, are such as amount to a desertion of his wife. They lived together on a farm. He left his house on or before the first of January, 1862, with the intention of never going back to it while she was there. He advertised his farm, and all his goods and furniture for sale, and sold them at auction in February. The farm he sold and conveyed to his brother, who brought a suit in ejectment against the complainant for it, and she in consequence left it in June; nearly all the furniture and provisions had been sold at the sale and removed after it, and the defendant afterwards furnished her no means of support. On December 10th, 1861, he had inserted in one of the county newspapers, a notice signed by him, warning any one from trusting her on his account. He never offered to take her back, or to provide her a home or support. This is clearly desertion, and unless justified by her conduct, is that kind of desertion which entitles her to a decree for divorce.

The defendant in his answer sets up two charges in recrimination: first, that for a year before his desertion she refused marital intercourse with him; and secondly, that the complainant, both before and since the desertion, has committed adultery with persons whose names are not mentioned.

The refusal of marital intercourse without sufficient reason is a wrong, and cannot be justified. But it is not sufficient

to justify either adultery or desertion, or any other unlawful marital dereliction on part of the party deprived of these rights. No authority is produced, and I know of none to sustain such position.

But adultery pleaded in recrimination, if properly pleaded and proved, is a good bar to a divorce. In this case the adultery is not properly pleaded. The defendant cannot plead generally that the complainant has been guilty of adultery, without naming the person with whom committed, or in some way describing him, or by giving time, place or circumstances, and thus identifying the act in such manner that the charge intended can be identified and repelled. For this purpose the same particularity is required as in a bill for divorce on account of adultery. A plea of new matter in bar, either at law or in equity, must be specific. *Jones* v. *Jones*, 3 C. E. Green 33; *Marsh* v. *Marsh*, 1 C. E. Green 391; *Mills* v. *Mills*, 3 C. E. Green 444; *Miller* v. *Miller*, 5 C. E. Green 216.

But without regard to the defect in pleading, none of the acts of adultery relied on are sufficiently proven.

The first charged in point of time, is with James Mount. This is testified to by W. C. Lewis. His story is rather improbable, and is denied by Mrs. Reid and Mount in their testimony. If it was proved, it had been condoned long before the desertion. The defendant cohabited with his wife for more than two years after Lewis told him of the fact; he admits that Lewis told him of it. This, as Lewis testifies, was two or three days after it occurred.

There is no evidence of adultery with Samuel Ely, the second charge attempted to be proved. The only fact tending to it is, that the defendant looking through the window, once saw Ely put his arm around her neck and kiss her, when in the house. She and Ely both deny it. It is a settled principle that a divorce is never granted upon the unsupported evidence of a party; and the like rule must apply to a charge pleaded in bar.

There is no evidence from which adultery with John

Ricketts can be inferred. He was seen sitting with complainant by an open window, and had left the room when the witness got up stairs to it.

The act charged with Wyckoff Morris, depends upon the testimony of Jane Preston. The facts proved by her are sufficient to create suspicion, but hardly sufficient to sustain the charge of adultery. But these facts are explicitly denied by the complainant and Morris, in their testimony, and she is contradicted by Schenck Bennett, in a material fact brought in to support her testimony.

The last charge of adultery in the evidence, is at her house where she lived, at Freehold, in July, 1862. This is attempted to be sustained by the evidence of Sarah Miller. It might be inferred from the facts which her evidence is adduced to support. But the whole force of her testimony depends upon the correctness of her inference that the footsteps she heard going up stairs, and in the complainant's bed-room, were the steps of more than one person; in this she might easily be mistaken. Besides, this testimony is fully repelled by the oaths of the two young men implicated by her; they both deny that they were in the complainant's bed-room on the occasion referred to, and that they ever committed adultery with her. She also denies it upon oath. None of the charges of adultery are sustained so as to bar the complainant from relief.