## CHARLES W. LEECH

*v.*

## SARAH E. LEECH.

[Submitted November 17th, 1913.   Determined November 17th, 1913.]

1. While the act of a wife in submitting to intercourse with her husband through force or duress, with knowledge of his previous adultery, would not constitute condonation thereof in a suit for divorce, yet where she continued to do so over a period of seven months, her acts could not be held involuntary within the rule that the injured spouse is placed to her election either to terminate their relations or forego the remedy for the offence.

2. A husband's adultery affording ground for divorce was not condoned by the wife's subsequent submission to intercourse with him, where he continued to treat her with extreme cruelty until she fled from his home.

On final hearing on petition and cross-petition for divorce.

Petitioner seeks a divorce against his wife for desertion.   The petitioner alleges that his wife deserted him by permanently leaving his home December 10th, 1908, and that the desertion has been willful, continued and obstinate for more than two years preceding the commencement of this suit against her.   The petition was filed April 6th, 1912.

The wife in her answer admits that she left petitioner's home December 10th, 1908, and has not since returned, but alleges that she was at that time obliged to leave petitioner by reason of his extreme cruelty.   By her cross-petition she seeks a divorce from petitioner by reason of his constructive desertion of her in driving her from his home by his cruel treatment, and also by reason of adultery which she charges that her husband committed prior to her leaving him.

By his answer to the cross-petition petitioner denies the charge of constructive desertion and alleges condonation as a defence to the charge of adultery.

*Mr. Joseph Beck Tyler,* for the petitioner.

*Messrs. Scovel & Harding,* for the defendant and cross-petitioner.

LEAMING, V. C.

There is little doubt touching the essential facts of this case. About seven months before Mrs. Leech left her husband's home she ascertained that he was living in adultery with the woman named as co-respondent in her cross-petition. The evidence at that time brought to her knowledge was the same evidence which she produced at the hearing; that evidence conclusively establishes the husband's guilt. When she learned of her husband's adulterous habits she confronted him with the charge and he brutally informed her that it was none of her business. Had she left him at that time no question touching her right to a divorce could exist. But she did not then leave her husband's home because she could not; she saw no way in which she could support herself and her son, in whom her life was centered. Accordingly she moved from the bedroom which she had theretofore shared with her husband to another bedroom in the same house for the purpose of escaping his embraces. From that time she never returned to his room or voluntarily permitted him to come to her room. But her purpose to deny to her husband sexual intercourse was futile. From time to time her husband would go to her bedroom and demand and receive the sexual privileges he sought. Her reason and only reason for permitting this was because she did not dare refuse him. Her fear of him was well founded. For a long time he had been drinking to excess and frequently returning to his home in a drunken and irresponsible condition and making himself a terror in the household. When drunk there was no safety in his presence, and at no time does it seem to have been safe for his wife to have resisted his will. She was undoubtedly living in constant fear of his violence, and her fears were fully justified by his conduct. In some of his assaults upon her she would escape physical injury by flight, in others she received severe physical injuries at his hands. This condition continued

up to the time she permanently left him. From the time she learned of her husband's adulterous conduct until about a week before she left his home he continued to go to her room from time to time and there have sexual intercourse with her, to which she submitted through fear of personal violence in the event of her refusal to accede to his demands.

From the foregoing statement of facts it will be observed that the wife has at no time since she learned of her husband's adultery voluntarily submitted to his embraces, nor did she at any time during that period in fact forgive him for either his adulterous conduct or his other acts of cruelty. This raises the question whether the failure of the wife for so long a period of time after she learned of her husband's infidelity to withdraw from his presence in such manner that it would not longer be necessary for her to submit to his embraces, with the knowledge on her part that her failure to so withdraw from his presence would necessitate the repeated acts of sexual intercourse with him which the testimony discloses in fact occurred, is operative to now deny to her the benefit of the claim that her sexual intercourse with her husband was involuntary and without forgiveness, and did not, in consequence, constitute condonation.

I should have great hesitancy in holding that submission by the wife to sexual intercourse with her husband under the circumstances already stated constituted condonation if that question could be properly considered an open question in this court. But in *Rogers* v. *Rogers, 67 N. J. Eq. (1 Robb.) 534,* the view is unequivocally adopted that the law places upon the injured spouse the election to terminate sexual intercourse or forego the remedy which the law gives for the offence, and that forgiveness, in its popular sense, is not a necessary element of condonation. In *Rogers* v. *Rogers* the adultery was by the wife and no element of involuntary marital cohabitation was involved, but the rule is there laid down that courts will not seek to discover the reasons which induce the offended party to forego the remedy afforded. It is of course true that the act of submission by the wife to sexual intercourse through force of duress would not constitute condonation, but continued acts extend-

ing over a period of seven months under the circumstances stated cannot be classed as wholly involuntary if the doctrine of election by the injured party to forego the legal remedy is preserved in its fullness as the basis of adjudications in cases of this class.

I think it unnecessary, however, to here determine whether the inability of the wife to leave her husband's home coupled with her continued submission to his embraces through fear of personal injury in the event of her refusal, constitute condonation; for even though it be assumed that sexual intercourse under the circumstances stated constitutes condonation such condonation will always be deemed conditional. That principle is stated by Vice-Chancellor Van Fleet in *Warner* v. *Warner, 31 N. J. Eq. (4 Stew.) 225,* as follows: "Condonation is always conditional, the condition being that the pardoned party shall in the future treat the other with conjugal kindness. And by this is meant that he shall not only refrain from a repetition of the offence forgiven, but shall also refrain from committing any other offence which falls within the cognizance of a matrimonial court." It is therefore held with great uniformity that if after the adultery of a husband has been condoned by his wife he is guilty of extreme cruelty to her the conditional element inherent in condonation is violated and condonation no longer exists as a bar to relief based on the offence thus conditionally condoned. In *14 Cyc. 643* this rule is stated as follows:

"An offence which has been condoned may be revived not only by a repetition of the same offence, but also by the subsequent commission of other marital offences. Thus the act of adultery will be revived by subsequent cruel and unkind treatment."

The history of this doctrine and the extent to which it has been adopted by the courts of this country is fully shown in *2 Bish. Mar., Div. & Sep. §§ 308-323.*

In the present case it is not definitely known how long the adulterous acts of the husband continued after the wife was apprised of his adulterous conduct, but his extreme cruelty not only continued throughout the entire period already referred to during which he had access to her bed but continued thereafter.

As already stated the last act of sexual intercourse between the parties was about a week before she fled from his home. His extreme cruelty continued up to the time of her departure. It is entirely apparent from the evidence that at that time the husband's habits and conduct were such that the wife could not with safety to either her health or her life longer remain in his home. The culminating act of physical violence occurred the day before her departure and was alone fully adequate to violate the condition of any condonation that may be said to have theretofore existed.

The views here adopted render it unnecessary to consider the other questions raised by the issues. I will advise a decree of divorce in favor of cross-petitioner upon the ground of adultery as charged in her cross-petition.