BENJAMIN ALEXANDER, RESPONDENT, v. SAMUEL REITER, APPELLANT.

Submitted December 10, 1923—Decided March 3, 1924.

H. D., trading as H. D. & Son, transferred to the plaintiff before maturity and for a valuable consideration, and without notice of any infirmity in title, two promissory notes made by the defendant to J. A. T., and endorsed by J. A. T. to H. D. The notes matured and were protested for non-payment. Later, H. D. died, and the plaintiff presented a claim to H. D.'s executor. The executor asked the plaintiff for the notes which the plaintiff delivered to the executor without consideration or the doing of an act indicating an intention to transfer title thereto to the executor. The executor engaged a lawyer, who instituted suit against the maker in the name of the plaintiff. The defendant contended that the delivery of the notes to the executor was a surrender of the plaintiff's interest therein which disenabled the plaintiff from instituting action thereon, and asked on this ground for a direction of a verdict for the defendant. The trial judge overruled the motion and directed the jury to return a verdict for the plaintiff. *Held*, that the direction of the verdict by the trial judge was proper.

---

On appeal from the Supreme Court.

For the appellant, *Albert C. Abbott.*

For the respondent, *Henry S. Alvord.*

The opinion of the court was delivered by

KATZENBACH, J.   This is an action commenced in the Supreme Court in August, 1922, upon two promissory notes. Both notes are dated on June 8th, 1916, and were made by the defendant, Samuel Reiter, to the order of James A. Toll. One note is for $1,000, payable ten months after date, and the other is for $881.40, payable eleven months after date. James A. Toll, the payee, endorsed the notes and delivered them to Henry Dolinsky, who traded as H. Dolinsky & Son. Henry Dolinsky endorsed them as H. Dolinsky & Son and delivered them to Benjamin Alexander, the plaintiff, before maturity, and for a valuable consideration.   The evidence discloses that the notes were left by the plaintiff with the Third National Bank of Philadelphia for collection.   They were protested for non-payment.   The plaintiff then procured the notes from the bank.   He endeavored to locate, without success, the maker.   He then consulted New Jersey counsel as the notes were made payable at a place in New Jersey called Wheat road.   The counsel consulted was unable to ascertain the whereabouts of the maker.   The lapse of time between the due dates of the notes and the commencement of the suit is explained by the fact that the plaintiff knew well Henry Dolinsky, who had transferred the notes to him.   He knew that he was financially responsible although slow in meeting his obligations, due to holding unproductive encumbered real estate, in which, however, his equity was large.   This knowledge he had gained while acting as the agent of Mr. Dolinsky in matters appertaining to his real estate.   He was not, therefore, apprehensive regarding the ultimate collection of the notes.

On June 5th, 1922, Mr. Dolinsky died, leaving his brother, Samuel Dolinsky, executor of a will which left to his brother Samuel his estate.   The plaintiff then presented his claim upon the notes to the executor.   This was done orally and

not in writing, in accordance with the practice in Pennsylvania, where Henry Dolinsky had his domicile. Samuel Dolinsky afterwards asked for and received the notes from the plaintiff without paying the plaintiff the amount due thereon. He handed them to Mr. Blank, his Philadelphia attorney, who handed them to a New Jersey attorney for collection. The defendant was located and the present action upon the notes instituted.

The answer set up that the payee, James A. Toll, received the notes from the defendant, signed in blank, and improperly and unlawfully filled in the amounts and delivered the same, without authority, to H. Dolinsky or H. Dolinsky & Son; that the notes were used to pay a debt of Toll to Dolinsky; that Dolinsky took the notes with notice of these facts; that the plaintiff also took the notes with notice. The answer did not set up payment. At the trial the defendant did not attempt to prove the fraud of the payee, and that the plaintiff took the notes with notice of the fraud as set up in the answer. Counsel for the defendant took the position that the delivery of the notes by the plaintiff to Samuel Dolinsky, the executor of the will of his brother Henry, who had endorsed and delivered the notes to the plaintiff, was a surrender of the notes, and that the plaintiff was thereby disenabled from instituting this action against the maker. The trial court declined to adopt this contention and refused to direct a verdict in favor of the defendant, and then directed the jury to return a verdict for the plaintiff for the full amount of the notes, with interest. From this directed verdict the defendant has appealed.

Assuming, for the purpose of argument, but not deciding, that the contention of the defendant is legally sound, an examination of the testimony shows that there was no evidence offered to support the defendant's contention that the plaintiff had surrendered the notes to Samuel Dolinsky and parted with his interest in them. While the word "surrender" was used, in the testimony, it was not used in the sense that the plaintiff was parting with his interest in the notes when he

handed them to Samuel Dolinsky. The plaintiff had the right, without surrender of the notes, to submit his claim to the executor of Henry Dolinsky's estate, as Henry Dolinsky was an endorser of the notes, and therefore under contract to pay them. Samuel Dolinsky, as executor, could have paid the amount due on the notes to the plaintiff and obtained from the plaintiff the notes. By such action he would have become the holder thereof. The evidence shows that he did not do that. He borrowed the notes and delivered them to his attorney for the purpose of proceeding against the maker for the collection thereof in the name of the plaintiff, who was not in law the holder thereof. This Samuel Dolinsky did for his own protection, as he knew, if recovery could not be had from the maker (the payee being insolvent), that he would be obliged to pay the notes from the proceeds of his brother's estate, thereby reducing by the amount due on the notes the sum he would receive for himself from the estate. There was no proof that the handing of the notes by the plaintiff to Samuel Dolinsky was intended to transfer the title to the notes. There was no proof that there was any consideration paid by Samuel Dolinsky to the plaintiff which would support a transfer of title to the notes. The testimony can be construed in no other way than that the intention of Samuel Dolinsky was to attempt to locate the maker and obtain for the plaintiff collection of the notes from the maker for the purpose of protecting himself from loss by being obliged to pay the notes from the proceeds of his brother's estate. The notes were at the trial produced and were in the possession of the plaintiff. Section 51 of the Negotiable Instrument act (3 Comp. Stat., p. 3740) provides that "the holder of a negotiable instrument may sue thereon in his own name." Section 191 (3 Comp. Stat., p. 3756) of the same act defines a holder as "the payee or endorsee of a bill or note who is in possession of it, or the bearer thereof." Section 52 of the same act (3 Comp. State., p. 3741) provides that "a holder in due course is a holder who has taken the instrument under the following conditions: (1) that it is complete and regular upon its face; (2) that he became the

holder of it before it was overdue, and without notice, that it had previously been dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. The evidence shows that the plaintiff had taken the notes under the conditions set forth in the portions of the Negotiable Instrument act quoted. He was the holder of the notes in due course. The direction of the verdict in favor of the plaintiff was proper.

The judgment entered on the verdict is accordingly affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, GARDNER, VAN BUSKIRK, CLARK, JJ. 11.

*For reversal*—None.