WILLIAM W. HASKELL, petitioner-appellant,

*v.*

C. HELEN HOPKINS HASKELL, defendant-respondent.

[Submitted October term, 1925.   Decided February 1st, 1926.]

1. Unjustified refusal of sexual intercourse persisted in willfully, obstinately and continually for a period of two years is a ground for divorce for the cause of desertion.

2. In such an action by the husband against the wife surrounding circumstances, as evidenced by the testimony of witnesses as to the mental and physical condition of the husband and the marital relations which he reluctantly confided to them, may be sufficient corroboration to satisfy the legal rule.

On appeal from a decree of the court of chancery advised by Advisory Master Child.

*Messrs. Whiting & Moore (Mr. Borden D. Whiting,* of counsel), for the petitioner-appellant.

The opinion of the court was delivered by

KAYS, J.

This was a suit for divorce by the husband against the wife. · The defendant did not enter an appearance in the court of chancery, nor file an answer, nor did she file a brief in this court. The case in the court of chancery was heard before a special master, to whom it was referred by the chancellor, which master reported in favor of a decree for divorce as asked for in the petition.

The petition sets up desertion on the part of the wife. The advisory master did not agree with the recommendations of the special master and advised against a decree for divorce, dismissing the petition.

The desertion in this case, according to the testimony of the petitioner, was due to the fact that the defendant refused to have sexual intercourse with the petitioner from the time of their marriage and for a period of about two years thereafter, when the petitioner left the defendant in February, 1922. The testimony of the petitioner was that he and the defendant from the time of their marriage, which occurred on August 24th, 1920, until February, 1922, occupied the same bedroom in the house of the defendant's mother, with whom they boarded. The petitioner testified that he treated the defendant kindly, and that he endeavored to reason with her in regard to the marital rights, and that in each instance she rejected him and fought against his efforts. The peti-

tioner stated that the defendant gave as a reason that she was opposed to having children, and was afraid that some serious trouble might result if such should be the case, as she had heard of other women in her family who had had trouble of this nature.

The petitioner testified that at the time he left his wife, in February, 1922, his physical and mental condition had become such as to compel him to do so. ·

The testimony which was offered to corroborate the circumstances surrounding the married life of the petitioner and the defendant was given by two friends and a physician who had been a physician in the petitioner's family, and who also had been a friend of his for a number of years. One of the witnesses was a Mrs. Wade, who knew the petitioner well, and with whom the petitioner had made his home for some time prior to his marriage.

Mrs. Wade testified that at the time of his marriage the petitioner was jovial and healthy, and presented the appearance of a clean-cut chap, and had served in the army during the world war; that after his marriage he visited her house two or three times a week, and often with his wife. She further stated that after a time he seemed depressed and not like himself. On different occasions, after noticing this, she asked him what the trouble was, and though he did not tell her for some time, she continued to ask him, and finally he told her his wife would not have anything to do with him and did not want to have intercourse with him.

The testimony of Mrs. Wade's son, Elmer E. Wade, was substantially the same as that of the mother. He stated that he had known the petitioner for a number of years. He noticed the change in him some time after his marriage, and after he had asked him why he appeared so unhappy, he finally told him it was because his wife refused to have sexual intercourse with him, and several times thereafter he asked the petitioner if any change had taken place in his wife's attitude toward him and his answer was always "No."

The family physician was called as a witness, who testified to the effect that the petitioner came to him and stated the

26

circumstances which existed between himself and his. wife; that he afterward made a physical examination of the petitioner and was of the opinion that he was capable of performing sexual intercourse; that the petitioner at the time of the examination was mentally "blue" and very much depressed, nervous and not as physically strong as before his marriage. He stated as his opinion that a man who had been deprived of sexual intercourse under such circumstances as appeared in this case would be likely to be affected as this man was, and that the symptoms which the petitioner showed could thus be accounted for.

We are of the opinion that the decree in this case should be reversed, and a decree for divorce on the ground of desertion granted.

It is well established in this state that unjustified refusal of sexual intercourse persisted in willfully, obstinately and continually for a period of two years is a ground for divorce for the cause of desertion, which rule is laid down in the case of *Parmly* v. *Parmly, 90 N. J. Eq. 490,* and *Raymond* v. *Raymond, 79 Atl. Rep. 430.*

The ground, however, upon which the advisory master based his conclusion was that there was no corroboration whatever of the petitioner's testimony that the defendant refused to have sexual intercourse with the petitioner.

From the circumstances in this case it could not be inferred that there was collusion between the petitioner and defendant. The matter of corroborating the refusal of a wife to carry out the proper marital relations which are expected of her by her husband in most instances is likely to be quite difficult. They are guarded and surrounded with the greatest secrecy, and regarded as sacred. A man and his wife are not likely to approach each other in such matters through third persons, not even through members of the other's family, nor through their family physician. It is evident in this case, the petitioner was loath to tell his most intimate friends of his trouble, and it was not until he had been pressed for an answer by them on several occasions that he finally unburdened his mind to them.

This it seems was the most natural thing for the petitioner to do. He had known his family physician intimately for a number of years; he had made his home with Mrs. Wade and her son, and these being his closest friends, were the people in whom he would confide with the hope that he might obtain some assistance in bringing about a happier relation between himself and his wife.

Vice-Chancellor Leaming, commenting upon the subject of corroboration, in the case of *Robinson* v. *Robinson, 83 N. J. Eq. 150* (affirmed by this court in *84 N. J. Eq. 201*), said: "Surrounding circumstances, adequately established, may be of a nature to fully supply the office of corroboration which the law requires in matrimonial cases."

We are therefore of the opinion that the circumstances surrounding this case, as evidenced by the testimony of the witnesses as to the mental and physical condition of the petitioner, and the matters which he confided to them, were sufficient corroborating circumstances to justify granting a divorce.

The order of the court of chancery dismissing the petition is therefore set aside, to the end that a proper decree may be entered for the petitioner, granting the relief asked for in the petition.

*For affirmance*—PARKER, MINTURN, KALISCH, BLACK, JJ. 4.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, JJ. 11.