THEODORA RAINS, petitioner-appellant,

*v.*

ALEXANDER RAINS, defendant-respondent.

[Submitted February term, 1940.   Decided April 25th, 1940.]

*Mr. Frank J. Ortolano (Mr. Anthony P. LaPorta,* of counsel), for the petitioner-appellant.

The opinion of the court was delivered by

WELLS, J.

This is an appeal from a decree of the Court of Chancery dismissing a petition for divorce brought by the petitioner, Theodora Rains, against the defendant, Alexander Rains.

The petition in this cause was grounded upon desertion through willful, continued and obstinate refusal to have sexual intercourse for a period of two years. The defendant, although properly served as an out-of-state resident, entered no defense and the matter was heard by the advisory master as uncontested.

At the time of the hearing the petitioner testified that the parties were married on September 22d, 1935. From that time until their complete separation they occupied a single room in the home of the petitioner's mother, for which no rent was paid. The petitioner further testified that, although they occupied the same bed, the defendant refused to have sexual intercourse after the month of April, 1936, because he said he had "a germ" and didn't want her to become a mother. This condition continued until April, 1939, when the defendant was asked by the petitioner to leave the house.

The petitioner stated that following the refusal of intercourse she became very nervous and cried almost every day. When asked by her mother the reason for her distress, the petitioner told her that the defendant didn't love her any more and that he was no husband to her. Because of her nervous condition the petitioner had received treatment from a chiropractor, Dr. Voza, and had been recently examined by Dr. Visconti, a practicing physician.

The petitioner's mother corroborated the testimony as to the date of marriage, the living arrangements of the parties, the time of complete separation, the excellent condition of petitioner's health, nerves and nervous system prior to her marriage. She also testified that after six months of married life her daughter, who had up to that time been healthy and happy, became sickly, nervous and cried every day and

had stated that her hubsand did not love her and was not a husband to her any more. The mother also testified that in the summer of 1938, when the petitioner was away on a vacation, the defendant said he hoped the petitioner would stay away forever because he wanted to sleep alone.

Dr. Visconti testified that he had examined the petitioner on September 25th, 1939, and had found no evidence of organic disease to the body in general or to the pelvic organs in particular, that there was no evidence from a clinical standpoint that she had ever been pregnant, although there was no organic barrier to conception. The doctor also stated that the petitioner was in a highly nervous state which might have resulted from or been aggravated by ungratified sexual desires.

Dr. Voza testified that for approximately two years from May, 1936, he had, from time to time, given the petitioner chiropractic treatments to relieve a nervous condition.

Additional testimony was given by a sister and a brother-in-law of the petitioner, who had been present at the marriage ceremony. They both stated that before the marriage the petitioner had been very jolly and happy, but that from about six months after the marriage she became nervous and irritable.

Following the hearing in this matter an order was entered dismissing the petition because of failure to sustain the truth of the allegations made in the petition. From such order this appeal is taken.

It is well established in this state that unjustified refusal of sexual intercourse persisted in willfully, obstinately and continually for a period of two years is a ground for divorce for the cause of desertion, which rule is laid down in the case of *Parmly* v. *Parmly, 90 N. J. Eq. 490; 106 Atl. Rep. 456,* and *Raymond* v. *Raymond, 79 Atl. Rep. 430.* In the instant case the testimony presented at the hearing would seem sufficient to support the granting of a divorce under the ruling of *Haskell* v. *Haskell, 99 N. J. Eq. 399; 131 Atl. Rep. 876.*

The advisory master, in his conclusions states that the testimony if taken at its face value, would justify a decree of

divorce. However, the petition was dismissed because on his observation of the appearance of the petitioner and her mother and their manner of testifying, he found as a fact that their testimony was not true. The only other reasons given by the advisory master for his finding that the testimony of the petitioner and her mother was untrue was that their testimony "matched," and was "improbable."

There can be no doubt that the findings of fact in the lower court will not be lightly disturbed on appeal, and that the appearance and demeanor of the witnesses is an integral part of their testimony. As this court has said in *Cartan* v. *Phelps, 91 N. J. Eq. 312; 109 Atl. Rep. 291,* "On an appeal from a decree from the Court of Chancery great weight is given to a finding upon a question of fact, because the vice-chancellor, who hears the case in the court below and sees the witnesses and hears them testify, has better opportunities to judge their credibility than the reviewing court."

However, in the same case of *Cartan* v. *Phelps,* the decree entered by the Court of Chancery was reversed by this court which said—"the rule giving great weight in the appellate court to the vice-chancellor's finding on a question of fact imposes no restraint on the power of the former to ascertain by full investigation and analysis of the evidence what the facts are, and whether the general finding is consistent therewith." This court went on to say: "Where, as here, the character of a party for truth and veracity is unimpeached, and his testimony is uncontradicted, is not contrary to circumstances in evidence, and contains no inherent improbabilities or contradictions which alone or in connection with other circumstances in evidence excite suspicion as to the truth of the testimony, it will be given effect."

Again, this court, in *Day* v. *Hopping, 95 N. J. Eq. 680; 123 Atl. Rep. 869,* states the legal rule thus (citing *Berckmans* v. *Berckmans, 16 N. J. Eq. 122; affirmed, 17 N. J. Eq. 453*) : "Express testimony cannot be rejected on the sole ground of its improbability."

In *Baldauf* v. *Russell, 88 N. J. Law 303; 96 Atl. Rep. 96,* cited in *Day* v. *Hopping, supra,* this court said : "It is true that the trial judge certifies that after cross-examination of

the witness, he concluded that his testimony was unworthy of belief. But the testimony of a competent witness cannot be capriciously rejected. There must appear some good reason for such action, as, for example, that his story was inherently improbable, or that it was contradicted by some other testimony or by some proven fact, or circumstance or by testimony impeaching his truth and veracity."

In the present case the veracity of the petitioner and her mother was not impeached, and their testimony was not contradicted but in fact supported, to a certain degree, by the other evidence in the case. The advisory master felt that their story was improbable because the parties occupied the same bed, but this cannot be said to be an inherent improbability in the light of similar facts adduced in the case of *Parmly* v. *Parmly, supra,* and *Haskell* v. *Haskell, supra.*

An advisory master, as a trier of the facts in contested or uncontested cases, has a right and a duty to consider the attitude and demeanor of the witnesses as it affects the credibility of their testimony. However, where the testimony would be sufficient to establish grounds for divorce, and that testimony is unimpeached, uncontested and not inherently improbable, we do not think that a mere general observation of demeanor, unsupported by examples of action or attitude which would inspire disbelief, is sufficient to support a finding that the testimony was untrue. Certainly this should not be sufficient in an uncontested case, where, as here, there is no evidence of collusion and where the dismissal of the petition, in the face of evidence otherwise adequate to establish grounds for divorce, necessarily imputes falsehood and perjury.

The order of the Court of Chancery dismissing the petition is therefore set aside, to the end that a proper decree be entered for the petitioner, granting the relief asked for in the petition.

*For affirmance*—THE CHIEF-JUSTICE, PORTER, JJ. 2.

*For reversal*—PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 12.