39 N.J. Super. 341 (1956)
120 A.2d 854
ROSE T. KIRK, PLAINTIFF-APPELLANT,
v.
HUGH P. KIRK, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 27, 1956.
Decided March 7, 1956.
*342 Before Judges GOLDMANN, FREUND and CONFORD.
*343 Mr. Otto E. Adolph argued the cause for plaintiff-appellant (Mr. Frederick C. Vonhof, attorney).
No appearance for defendant-respondent.
The opinion of the court was delivered by CONFORD, J.A.D.
This is an appeal from a dismissal after hearing of an uncontested action for divorce on grounds of desertion. The parties were married September 16, 1950. Plaintiff left the defendant November 19, 1954, she testified, because he refused her request to allow her to have children. The complaint herein was filed March 2, 1955. It recites a desertion of the plaintiff by the defendant ever since the marriage date by reason of his refusal to have sexual relations with her "without the use of a prophylactic or of some other instrumentality which would prevent her conceiving a child"; that this was contrary to her wishes; that she often "asked the defendant to have normal and uncontracepted intercourse with her which he absolutely refused to do."
At the trial she testified that from their marriage date until the summer of 1954 she had sexual intercourse with the defendant "a few times a week," the defendant, however, always using a contraceptive device; that prior to the marriage she had discussed with him her desire to bear children and that he did not then evince any objection; that "during the first year of marriage" (but without indicating precisely when) he explained to her he didn't want children until he had paid for the furniture; that "after the first year" of the marriage they frequently discussed his use of contraceptives and "he said that he didn't want any children until he owned his own home"; that they frequently argued over her bringing the subject up.
She testified that on June 12, 1954 and on July 19, 1954 she left him after arguments and that on each occasion he sought her out after a day or two and induced her to return on the promise "to give me children right away"; but that he did not keep his promise but continued the use of contraceptives during intercourse with her. After the July return *344 she says "intercourse was far and few between, because I knew he was just tricking me to stay." On October 15, 1954 she withdrew entirely from marital relations with defendant, and, as stated, left him on November 19, 1954. He never thereafter sought her out.
There was testimony by the plaintiff's mother to the effect that about a year after the marriage she asked defendant why they were not having children and that he said they were waiting until the furniture was paid for; that later he told her they wanted to wait until they had a car; also that he said he did not like children. She corroborated the solicitations by defendant of plaintiff's return to him when she left in June and, again, in July of 1954, and his promises then to "have a baby if she would go back." Other relatives of plaintiff testified concerning invidious remarks by defendant on the subject of children.
The foregoing constitutes the substance of plaintiff's case. The right to relief was rested before the trial court upon Kreyling v. Kreyling, 20 N.J. Misc. 52, 23 A.2d 800 (Ch. 1942). The trial court held that case not applicable, construing it to hold only that the refusal of a spouse to have uncontracepted sexual intercourse will justify the other in refusing any sexual relations at all and that if the attitude of the offending spouse continues thereafter in opposition to natural intercourse for the statutory period of two years a cause of action for divorce on the ground of desertion will mature. The court consequently held that here, where the action was instituted less than five months after the last marital relations, the cause of action was not ripe for suit. The position of the trial court comports with the holding in the Kreyling case on its facts. There the evidence was that the defendant husband refused to permit the petitioner to have children and that contraceptives were used, she submitting unwillingly, during a three-year period of cohabitation. She then ceased marital relations because he said he would never consent to have uncontracepted intercourse with her. More than two years later, his attitude persisting, she filed an action for divorce for desertion and was successful. *345 The present plaintiff strongly relies upon the following dictum by the court in the Kreyling case (20 N.J. Misc., at page 59):
"Where both husband and wife willingly indulge in birth prevention no legal problem arises, the matter being solely one for the individual consciences of the parties, honestly formed according to their religious and moral beliefs. Where, however, as the evidence in the instant case shows, one of the parties, the defendant, solely for his own personal selfish convenience, or, as he puts it, so that he may enjoy the luxuries of life, insists upon contraception to prevent his wife from becoming a mother, he being the active agent in the use of the contraceptive device over her continued protests and against her will, it must be said that such conduct persisted in willfully, obstinately and continually for two years is cause for divorce on the ground of desertion."
For present purposes it is not necessary for us to decide whether, under any conceivable set of facts, the statutory desertion period will run during a continuous cohabitation of married people regularly experiencing sexual relations wherein contraception is being effected by one spouse genuinely against the will and bona fide protests of the other. We do not consider such a case made out here on the record before us.
It is the law of this State that the unjustified refusal of sexual intercourse persisted in willfully, continuously and obstinately by a spouse for a period of two years constitutes a ground for the dissolution of the marriage for the cause of desertion. See Crowell v. Crowell, 33 N.J. Super. 272, 274, 275 (App. Div. 1954) and the cases cited therein. We have no doubt that it is a corollary of that rule, in principle, as first articulated in the Kreyling case, that the right of a spouse to the sexual cooperation of an apt mate toward the procreation of children of the union is so primary an incident of the institution of marriage that its unjustified denial by contraception is an act of desertion by the offending spouse. See Fink v. Fink, 30 N.J. Super. 531, 532 (Ch. Div. 1954); cf. Pisciotta v. Buccino, 22 N.J. Super. 114, 117 (App. Div. 1952); see Annotation, 4 A.L.R.2d 227, 235, 237; case comments in 16 Temple L. *346 Q. 345 (1942); 55 Harvard L. Rev. 1044 (1942), 7 U. of Newark L. Rev. 192 (1942) (wherein the Kreyling case generates concern as to possibilities of "fraud upon the court with little or no effort"); Note, Willful Refusal to Have or Bear Children as Grounds for Divorce or Annulment, 55 Yale L.J. 596 (1946); O'Neil, Domestic Relations, 9 Rutgers L. Rev. 260, 262 (1955). To what extent, if ever, such a denial might be justified in other circumstances need not here be inquired into. In the situation here presented there was no justification. But desertion under the statute requires a showing of obstinacy, i.e., it must be against the will of the offended spouse, Munger v. Munger, 130 N.J. Eq. 279, 285 (E. & A. 1941). Moreover, all of the statutory requisites, including obstinacy, must be shown to have persisted for the full two-year period. N.J.S. 2A:34-2b. The elements of a cause of action based upon desertion must be established by "clear and satisfactory proof." Howard v. Howard, 135 N.J. Eq. 55, 57 (E. & A. 1944). In cases where the desertion is charged to be constituted by denial of matrimonial intercourse the requirement is that the proof be "clear and convincing." Stieglitz v. Stieglitz, 92 N.J. Eq. 292, 294 (E. & A. 1920); Streader v. Streader, 18 N.J. Super. 433, 437 (App. Div. 1952); and see Munger v. Munger, supra (130 N.J. Eq., at page 283). There must be corroboration of each element, direct or circumstantial. Streader v. Streader, supra (18 N.J. Super., at page 436). The fact that the action is uncontested should make the court more rather than less perspicacious in appraising the adequacy of the proofs, the State being a third party in every matrimonial litigation interested in the maintenance of the marriage compact as the principal foundation of our society. Armour v. Armour, 138 N.J. Eq. 145, 158 (E. & A. 1946); Akrep v. Akrep, 1 N.J. 268, 270 (1949); Pisciotta v. Buccino, supra (22 N.J. Super., at page 116, 117); Godfrey v. Shatwell, 38 N.J. Super. 501, 506 (Ch. Div. 1955).
We cannot but conclude that the proofs here adduced fell short of the standard insofar as obstinacy is concerned. There is no clear proof that the plaintiff objected at all to *347 contraception during the first year of the marriage. There is only testimony that the parties discussed the subject of children and that defendant mentioned "money obligations" such as furniture payments as an obstacle. There is no clear and convincing testimony of any really earnest insistence by the plaintiff that defendant desist from the objectionable practice after the first year, at least prior to June of 1954, when plaintiff asserts she left the defendant because of an argument over her desire to have children. Much of the purported proof was educed by leading questions. It strikes us that a sincerely held objection on the part of the plaintiff to the practice of contraception by the defendant would probably have led, long prior to the latter part of the fourth year of the marriage, to an attempt, at least, to compel defendant's compliance with her rights by a refusal of the contracepted intercourse. While she says: "He just didn't care for children, but kept deceiving me all the time we were married, and kept putting it off, and said we would have children when we got our own home, but never made efforts to save money to get his own home," nevertheless she indulged in the supposedly objectionable relationship three times a week, week after week, for almost four years. In all other respects, moreover, save for her objections to his week-end hunting trips, the parties seem to have lived as a normal, reasonably well-adjusted married couple. The circumstances reflect grave doubt as to whether defendant's conduct was against plaintiff's will in the sense of establishing it as obstinate desertion, actual or constructive. Cf. Hafner v. Hafner, 66 N.Y.S.2d 442, 444 (Sup. Ct. 1946) ("where one spouse mildly objects but continues the restricted intercourse for a number of years and then claims fraud, the court is not justified in inferring that the defendant alone intended to avoid the birth of children or that the plaintiff is the victim of fraud"); Gerwitz v. Gerwitz, 66 N.Y.S.2d 327, 330 (Sup. Ct. 1945). We do not conceive that the mere showing of an expressed desire or preference for having children on the part of one spouse will suffice to establish her willful and obstinate desertion by the other during a *348 period of otherwise voluntary and regular participation by her in exclusively contracepted marital intercourse, notwithstanding that the practice of contraception is at the instance of the other spouse. The plaintiff is not shown to have been under any compulsion or duress to submit to the conditions she now complains of. Cf. Leech v. Leech, 82 N.J. Eq. 472, 473 (Ch. 1913).
The trial court made no specific finding concerning obstinacy or as to any other factual requisite since it concluded, as noted, that the period of alleged desertion could not as a matter of law begin to run prior to the cessation of marital intercourse in October 1954. In view of our reaction to the proofs presented here we prefer to rest our affirmance of the judgment of dismissal on our independent finding of fact, in the exercise of our power to make it, that plaintiff has not sustained her burden of establishing a two-year period of willful and continuously obstinate desertion accrued prior to the institution of the action.
Affirmed.