44 N.J. Super. 483 (1957)
130 A.2d 877
MARIAN L. BORMAN POPE, PLAINTIFF-APPELLANT,
v.
HAROLD RAYMOND POPE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 1, 1957.
Decided April 11, 1957.
*484 Before Judges GOLDMANN, FREUND and CONFORD.
*485 Mr. George G. Mutnick argued the cause for plaintiff-appellant (Messrs. Joseph J. and George G. Mutnick, attorneys).
No appearance for defendant-respondent.
The opinion of the court was delivered by CONFORD, J.A.D.
This is an action for divorce on grounds of desertion constituted by willful, continued and obstinate refusal by the defendant husband to have sexual intercourse for a period of two years with the plaintiff wife. The defendant was not represented at the hearing. The trial judge held that plaintiff's case was not corroborated by testimony of others or by circumstances of an extent and character sufficient to carry a "moral conviction" of its truthfulness and consequently dismissed the complaint.
Plaintiff gave this testimony. The parties were married in 1945. They lived in a five-room apartment in a property they owned until April 1955, when she moved out after they reached a property settlement. Prior to April 1953 they quarreled frequently over his staying out nights and not telling her where he had been. At that time "we had a grand fight over the same subject and he said he was through, he didn't love me any more. He felt like he didn't want any more of me, any part of me socially or physically and he took all his personal belongings and moved them to the other end of the apartment and he started to live there." Thereafter there were no sexual relations between them whatsoever. At one point she stated that whenever she saw him, "which was infrequently," she "would plead with him" to live with her as man and wife but he refused, said he was "through." Later in the hearing she said that during the next two years she asked him to resume cohabitation "at least a couple of times a week," or about "a hundred times altogether." She asked both her sister and father to talk to her husband about the problem but nothing came of their efforts. She was also under a doctor's care "for a nervous disorder."
*486 Plaintiff's sister, Mrs. Johnson, testified she lived next door to the parties and was in their home taking care of it daily while plaintiff was at work and visited there evenings. The parties had "a very serious argument" in April 1953 and plaintiff asked her to intercede with defendant. She talked to him and he told her he was "through" with his wife. Nevertheless she took the subject up with him again "as often as I saw him," which would be once or twice a month, and he continued his refusals, the last just prior to the institution of the action in April 1956, altogether "fifteen or twenty" times. She could tell by the "condition of the bed" in plaintiff's bedroom that only one person slept there. She never saw any of his clothing in that room "after April 1, 1953." Neither plaintiff nor the sister described defendant's supposed sleeping arrangements at the house. Plaintiff's father was not called as a witness at all.
A close personal friend of plaintiff, Theresa Palkowitz, with whom she went to live after leaving defendant, testified she visited the home of the parties regularly, "once or twice a week," leaving at "ten or eleven at night" and never saw defendant there, in fact "wouldn't know what he looked like."
A Dr. Ittleman testified he treated plaintiff, beginning in July 1953, for about three years for complaints of "intense nervousness, tension, emotional upset and depression." He was obviously about to testify that plaintiff told him that she felt her condition was due to the husband's refusal of relations, but the trial court would not permit it, ruling from authority in the negligence field that the physician could not repeat so much of the history received from the patient as went to "how [the complaints and symptoms] are received" and that the proffered hearsay was not within the rule of Haskell v. Haskell, 99 N.J. Eq. 399 (E. & A. 1926). The doctor was, however, permitted to say that the plaintiff told him about "her marital difficulties" and that he attributed her symptoms to those difficulties.
In dismissing the complaint for the reason noted above the trial judge said, as to the testimony of Mrs. Johnson:
*487 "From my observation of the plaintiff's sister while on the witness stand and considering the nature of her testimony compels me to withhold granting any credence to the same."
Plaintiff's major point of appeal is that the denial of credence to the testimony of the sister was arbitrary and capricious "since it was not shown to be contradicted, impeached or inherently improbable," citing Rains v. Rains, 127 N.J. Eq. 328 (E. & A. 1940). This decision illustrates the rule that the continuous withholding of sexual relations against the will of the other spouse for the statutory two-year period will give rise to a cause of action for divorce as for desertion. The court reversed a denial of a judgment nisi by an advisory master explained as based upon his finding that the testimony of the petitioner and her mother was untrue from his observation of their appearance and manner of testifying and because their testimony "matched" and was "improbable." The review of the testimony in the opinion of Judge Wells indicates that the Court did not agree that the uncontradicted testimony was improbable and it quotes with approval (127 N.J. Eq., at page 331) the earlier opinion of the Court in Cartan v. Phelps, 91 N.J. Eq. 312, 316, 317 (E. & A. 1920), to the following effect:
"Where, as here, the character of a party for truth and veracity is unimpeached, and his testimony is uncontradicted, is not contrary to circumstances in evidence, and contains no inherent improbabilities or contradictions which alone or in connection with other circumstances in evidence excite suspicion as to the truth of the testimony, it will be given effect."
We think there was ample basis for the exercise of the fact-finding function by the trial judge adversely to plaintiff's cause within the criteria in the quoted excerpt. It is well recognized that corroborative proof of this kind of complaint is difficult and it is for this reason that the hearsay restrictions are relaxed to permit easier access to the truth, Haskell v. Haskell, supra; Franklin v. Franklin, 140 N.J. Eq. 127, 129 (E. & A. 1947). Yet the contention is of a nature which, by the same token, is peculiarly susceptible of fraudulent contrivance as a means of evasion of *488 the statutory requirement for a two-year period of desertion, and, consequently, unusually heavy reliance, particularly in an uncontested case, must ordinarily be placed upon the capacity of the trial judge, observing and hearing the witnesses, to determine whether "the entire picture carries with it a moral conviction that can be sensed from all the surrounding circumstances," ibid. (140 N.J. Eq., at page 129); cf. Capozzoli v. Capozzoli, 1 N.J. 540, 541 (1949). The proof must be "clear and convincing," Stieglitz v. Stieglitz, 92 N.J. Eq. 292, 294 (E. & A. 1920); Kirk v. Kirk, 39 N.J. Super. 341, 346 (App. Div. 1956).
It is difficult to reconcile the testimony of the witness Palkowitz that she never even saw the defendant over a period of years of semi-weekly visits, with plaintiff's testimony that in two years she asked defendant one hundred times to resume normal relations and that of Mrs. Johnson that she saw and spoke to him once or twice a month in the same vein during the same period. The frequency and regularity of the alleged reconciliation efforts by plaintiff and her sister of themselves evoke the reaction: "Methinks thou dost protest too much." The general picture is suspiciously pat and coated with blurring generality. The convincing focus that normally comes from circumstantial detail is absent. The leaving by plaintiff comes two years to the month from the date of alleged cessation of relations and immediately after a property settlement. The father, who also purportedly interceded with defendant, is not called as a witness. Some of these circumstances are not in themselves necessarily improbable or suspicious but others clearly are, and the aggregate could well leave the trial judge, particularly under the influence of his personal impressions of the credibility of the witnesses from demeanor, well short of the moral conviction of truth of the cause which a case of this kind must generate in his mind before he can in conscience and duty grant a judgment nisi. We cannot agree with plaintiff's argument that the conclusion by the trial judge of insufficient corroboration is "manifestly contrary to the evidence."
*489 So much decided, we take this occasion to express the view that the trial court might well have permitted the medical witness to state the full story related to him by the plaintiff. Notwithstanding that the particular exception to the hearsay rule stated in the Haskell case, supra, is not here applicable, plaintiff not having gone to the witness in order to seek aid in effecting a reconciliation, yet the circumstance that she sought medical help for relief from a condition which she attributed to cessation of matrimonial relations could conceivably cast some light, whatever its probative weight under all the circumstances, on the difficult factual problem which typically faces a judge in this kind of case. While the court is always vigilant of the interest of the State in the maintenance of every marriage, Kirk v. Kirk, supra (39 N.J. Super., at page 346), the denial of a divorce in a case where in truth the statutory requisites exist is equally an injustice, and of a most grievous kind. Anything that contributes factual detail and background is of potential aid in the search for the "picture" of "moral conviction," Franklin, supra, which is here all-important. There being no jury, the trial judge is ordinarily well-advised to hear the confidant's full story and then exercise his experienced judgment on the entirety of the case. The modern view is not that hearsay evidence may not be psychologically helpful in the search for the truth but that, upon objection by an adversary (and only upon such objection), the proponent will not be permitted to adduce it, because the declaration has not been subjected to the tests of recital under oath and cross-examination. Morgan, "Hearsay Dangers and the Application of the Hearsay Concept," 62 Harv. L. Rev. 177 (1948). The rule is continually undergoing re-examination in the interest of confining its exclusionary effect to situations supportable rationally. Ibidem.
It is of especial interest that in the present context the entire statement of the plaintiff to the physician would be admissible, under the Model Code of Evidence, Rule 503(b), and the Uniform Rules of Evidence, Rule 63(1) (also *490 recommended for adoption by the Supreme Court Committee on Revision of the Law of Evidence), as a statement "by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter" and of a kind admissible if made by the declarant while testifying as a witness. While the New Jersey cases do not yet go so far, confining admissibility of prior consistent statements of a witness to certain situations where his credibility is brought in question, State v. D'Ippolito, 19 N.J. 540, 550 (1955); State v. Neiman, 123 N.J.L. 341 (Sup. Ct. 1939), affirmed 124 N.J.L. 562 (E. & A. 1940), and then only on the issue of credibility, State v. Griffin, 19 N.J. Super. 581 (App. Div. 1952), the recommended liberalization could frequently be usefully invoked with no harm and much potential aid in ascertaining the truth by a discerning and conscientious judge in uncontested actions in this sensitive area. "Rules circumscribing admissibility are * * * in normal practice considerably relaxed in the absence of a jury." State v. Sullivan, 24 N.J. 18 (1957). But the discretion of the trial judge is controlling even in this kind of situation if the testimony is legally incompetent.
It is clear to us, however, that the trial judge assayed and gave to the doctor's testimony such weight as he believed it deserved on the assumption that it imported that plaintiff had related to him the same story she gave in evidence. While this testimony was the least vulnerable in the case, it could not of itself carry the plaintiff's burden against the contrary conviction of the trier of the facts flowing from the adverse factors noted above.
Affirmed.