109 N.J. Super. 287 (1970)
263 A.2d 155
KATHERINE B. JACOBS, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT,
v.
SAMUEL W. JACOBS, DEFENDANT-RESPONDENT AND CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 12, 1970.
Decided March 19, 1970.
*290 Before Judges KILKENNY, LABRECQUE and LEONARD.
Mr. Albert G. Besser argued the cause for appellant (Messrs. Hannoch, Weisman, Stern and Besser, attorneys; Mr. L. Robert Lieb, on the brief).
Mr. Marvin H. Gladstone argued the cause for respondent (Messrs. Shedd, Gladstone & Kronenberg, attorneys).
The opinion of the court was delivered by LEONARD, J.A.D.,
In this matrimonial action plaintiff wife appeals from a judgment dismissing her complaint for separate maintenance and granting defendant a divorce on his counterclaim predicated upon simple desertion  her willful refusal to have sexual relations. Plaintiff also appeals from the award of a $7500 counsel fee to her attorneys, asserting it to be inadequate. Defendant cross-appeals from those portions of the judgment awarding support to his children and assessing the above counsel fee to plaintiff's present attorneys and a fee of $500 to her former attorney.
The parties were married on December 21, 1946. Two children were born, Ronald in 1952 and Mark in 1954. Between 1950 and 1952 defendant started a business, Boulevard Steel Company, in which plaintiff was given an interest. Shortly thereafter their business and social acquaintance, I.B. Steinberg, was made a one-third partner in Boulevard. In 1955 the parties purchased a home in Tenafly, New Jersey. Although the business apparently prospered during the next few years, the marriage did not. Ultimately, on July 1, 1964 defendant moved out of the marital residence.
*291 On June 30, 1965 plaintiff filed a complaint for separate maintenance. Therein she enumerated many acts of indignity and cruelty allegedly committed by defendant. However, the basis of her cause of action was that defendant had abandoned her and had thereafter refused and neglected to properly support her and the children. Defendant filed an answer and a two-count counterclaim for divorce. The first count of the counterclaim alleged that plaintiff had been guilty of desertion by willfully and obstinately refusing to have sexual intercourse with him since July 1, 1963 and for a period of two years thereafter. The second count charged her with extreme cruelty.
Trial of the case (excluding many pretrial motions) consumed 22 separate days protracted over a 10-month period. Each party testified. In addition, each called numerous witnesses, among whom were accountants, psychiatrists, friends, relatives and business associates. All were examined at great length on both direct and cross-examination.
Following the hearings the court filed a written "statement of facts and conclusions of law." Therein, among other things, it found that the proofs demonstrated that plaintiff was guilty of simple desertion in that, commencing on July 1, 1963 and for a period of two years thereafter, she persistently and willfully refused to indulge in normal sexual relations with defendant; that defendant's conduct to plaintiff did not constitute extreme cruelty and that his act in leaving the home was not acquiescence in her desertion. Further, the court stated that upon the evidence adduced "defendant was not required to stay and suffer the indignities offered him and to submit to further insult as well as injury." Thereupon, judgment was entered dismissing plaintiff's complaint for separate maintenance and awarding defendant a divorce on his counterclaim on the ground of simple desertion. The second count of his counterclaim, which charged extreme cruelty, was dismissed. Plaintiff's motion for a new trial was denied.
*292 Plaintiff first contends that the trial court erred in finding that plaintiff deserted defendant. In support of this position she offers a number of arguments against the validity of the court's holding which related to her "persistent and unjustified refusal * * * to indulge in normal sexual relations for two years." Before considering these, we note that it is not disputed that the continuous unjustifiable withholding of sexual relations against the will of the other spouse for the statutory two-year period will give rise to a cause of action for divorce on the ground of desertion. Pope v. Pope, 44 N.J. Super. 483, 487 (App. Div. 1957); Kirk v. Kirk, 39 N.J. Super. 341 (App. Div. 1956); Munger v. Munger, 130 N.J. Eq. 279, 282 (E. & A. 1941).
Plaintiff first argues that there is no corroborative proof for the finding that she refused to have sexual relations or that this refusal commenced on or about July 1, 1963 and lasted for two years thereafter. The court found corroboration not only from the testimony of specific witnesses but also from the surrounding circumstances shown by the totality of the evidence adduced. After considering all the proofs, the court concluded that defendant's testimony was given in "a most forthright and open manner" and, to the contrary, plaintiff's testimony was "unworthy of belief."
Defendant testified that the last occasion upon which plaintiff permitted him to have relations with her was on or prior to July 1, 1963; that at no time thereafter would she respond to his sexual advances, and that she refused his request for sexual intercourse at all times thereafter. Plaintiff, in her extensive testimony, never denied defendant's testimony on this issue, and the absence of this denial was noted by the court as an affirmance of the facts testified to by him. Helen Goldenberg, plaintiff's best friend and a witness for her, testified that at a reconciliation meeting held late in 1963, at which she was present, defendant said that they didn't live as man and wife and that plaintiff replied that "she was afraid to have any relations with Sam" and further admitted that this situation had existed from *293 four to six months prior to that meeting. Plaintiff's sister, Mildred Binder Olkan, testified that in the spring of 1963, while she was living at the home of the parties, she overheard arguments between them relating to plaintiff's refusal to have intercourse. Additionally, although Dr. Herman Alpert, plaintiff's psychiatrist, did not specifically testify that plaintiff told him that she had ceased to have intercourse with defendant, that fact is reasonably inferable from his testimony.
It cannot be denied that in these cases there must be corroboration of the testimony of the one spouse that the other willfully avoided conjugal intercourse. Crowell v. Crowell, 33 N.J. Super. 272, 276 (App. Div. 1954). However, it is well recognized that corroborative proof of this kind of complaint is difficult and it is for this reason that the hearsay restrictions are relaxed to permit easier access to the truth. Pope v. Pope, supra, 44 N.J. Super., at 487. Consequently, unusually heavy reliance must ordinarily be placed upon the capacity of the trial judge, observing and hearing the witnesses, to determine whether the entire picture carries with it a moral conviction that can be sensed from all the surrounding circumstances. Id. at 488. See also Franklin v. Franklin, 140 N.J. Eq. 127, 129 (E. & A. 1947); Haskell v. Haskell, 99 N.J. Eq. 399, 402 (E. & A. 1926). The trial judge, upon a consideration of all the testimony and after observing and hearing the witnesses and weighing their credibility, found that the entire picture did carry with it a moral conviction, that could be sensed from the testimony of witnesses as well as from all the surrounding circumstances, that plaintiff willfully, continually and obstinately and without justification refused to have sexual intercourse with defendant from July 1, 1963 to July 1, 1965. This factual finding and the determination that it was sufficiently corroborated is more than reasonably supported by the credible evidence in the record. Thus, we hold this argument to be without merit.
*294 Plaintiff next asserts that refusal of one spouse to engage in sexual intercourse for less than the statutory two-year desertion period does not justify the aggrieved spouse's departure from the matrimonial abode. She argues that if he departs for this reason, before the running of the two years, he cannot obtain a divorce on the ground of desertion. Thus, plaintiff's position is that defendant's leaving on July 1, 1964 tolled the running of the two-year period, and consequently the court erred in awarding him a divorce on the ground of a desertion which commenced on July 1, 1963 and continued until July 1, 1965.
Plaintiff, in support of this assertion, relies upon Pierson v. Pierson, 119 N.J. Eq. 19 (E. & A. 1935); Lammertz v. Lammertz, 59 N.J. Eq. 649 (E. & A. 1899), and Reid v. Reid, 21 N.J. Eq. 331 (Ch. 1871). All of these cases are inapposite.
In Pierson v. Pierson, supra, the complainant wife refused to have sexual relations with her husband because he was seeing another woman; she found contraceptives in his pocket and they had continual disagreements as to money matters. Complainant wanted her husband to leave and not come back. After about four months he did leave. Thereafter, when she filed an action for separate maintenance he counterclaimed for a divorce upon the basis of desertion  her refusal to have sexual relations with him. The court, in denying him this relief, said:
He does not claim that he was justified in leaving his home on the ground that his wife was guilty of a matrimonial offense other than her refusal to have sexual intercourse, but this refusal had continued * * * a period of about four months. Until and unless it had continued for a period of two years, the complainant would not have been guilty of a matrimonial offense justifying the defendant's separation from her. He cannot maintain that it would have so continued had he remained in the home. He has failed to establish * * * that the complainant deserted him on May 4, 1931, and that ever since that time her desertion has been willful, continued, and obstinate. Assuming that she was the deserter as of May 4, 1931, because of her refusal of sexual intercourse, such desertion was neither willful nor obstinate over a period of two years [119 N.J. Eq. at 23].
*295 However, this conclusion was based upon the court's determination that defendant's conduct contributed substantially to the disagreement between the parties; that after he left the home he did not make such just advances as he should have made, and he did not establish that if he had made them, they would have been unsuccessful in securing a reconciliation. Id. at 22.
In Lammertz v. Lammertz, supra, defendant wife, left the home of her husband and remained away more than two years, during which she made no overture for a return. In defending against her husband's divorce action based upon desertion she asserted that she left because her husband had left her bed and slept in another room for months before she departed. The court found that this did not justify her departure. However, again this conclusion was based upon the fact that she at no time expressed her willingness to return and she left little hope that she would do so. Thus, the court found her desertion to be obstinate and conferred upon her husband a right to divorce. Id. at 650.
In Reid v. Reid, supra, defendant husband admitted that he had left his house more than two years before plaintiff instituted her divorce action. However, in his answer, and by way of recrimination, he asserted that for a year before his desertion she refused marital intercourse with him. The court stated that although the refusal of marital intercourse without sufficient reason is a wrong and cannot be justified, nevertheless, it is not sufficient to justify desertion on any other unlawful marital dereliction on the part of the party aggrieved. Again, the court in reaching this conclusion noted that defendant left his house with the intention of never going back while plaintiff was there and that he never offered to take her back or provide her a home. Id. at 332-333.
In no one of the above cases did the court specifically hold that the leaving of the matrimonial abode by the aggrieved spouse before the expiration of the two-year statutory *296 desertion period, per se, tolls the running of the remaining portion of the desertion period and bars that spouse from securing a divorce on the ground of desertion.
To the contrary, in Stieglitz v. Stieglitz, 92 N.J. Eq. 292, 294 (E. & A. 1920), the court said: "For the husband in the present case was at liberty to abandon his wife after bona fide and repeated trials to have sexual intercourse with her and her refusal to permit him." Likewise, in Haskell v. Haskell, supra, 99 N.J. Eq. 399, the husband sued the wife for divorce on the ground of desertion  her refusal to have marital relations with him. The court granted him a divorce even though his proofs indicated that he left his wife only 1 1/2 years after her refusal had commenced. The court found that the husband had endeavored to reason with his wife in regard to the marital rights and that in each instance she rejected him. Further, it noted that at the time he left "his physical and mental condition had become such as to compel him to do so." At 401.
Thus, from a reading of the above-cited cases, we hold that where one spouse charges the other with willful refusal to have sexual relations, the fact that the aggrieved party leaves the marital abode before the expiration of the two-year desertion period does not per se toll the remaining portion of the period. Rather, such leaving by the aggrieved party is a fact which should be considered together with all the other facts and circumstances in resolving whether the desertion was willful and obstinate during the entire two years, or whether the leaving by the aggrieved spouse converted the situation into one that was consensual. In resolving this question, inquiry must be made as to whether the aggrieved spouse, following his departure, continued to make bona fide efforts for reconciliation.
In the instant case the court found, and it is reasonably supported by the evidence, that defendant continuously for the entire period of two years, both before and after his departure, personally and through intermediaries, made numerous *297 bona fide advances to plaintiff for reconciliation and for the resumption of a husband-wife relationship. However, these all "fell on deaf ears" and were of no avail.
Further, the court, based upon plaintiff's actions, concluded that she was "hostile, mean, cruel and despotic" to defendant and that she was guilty of "opprobrious" conduct. Although the court's "statements of facts and conclusions of law" do not contain an express finding that plaintiff was guilty of "extreme cruelty," that conclusion is nevertheless vividly implicit therein. No contrary inference arises because of the court's dismissal of the second count of defendant's counterclaim. This was done, not upon the merits, but rather "[i]n view of the affirmative relief granted defendant on the first count * * *." In any event, in modern understanding, a total rejection of sexual intercourse constitutes grounds for divorce predicated upon extreme cruelty. Goldstein v. Goldstein, 97 N.J. Super. 534, 535 (Ch. Div. 1967); Melia v. Melia, 94 N.J. Super. 47, 51 (Ch. Div. 1967).
For all of the reasons stated, and in light of all of the facts and circumstances here present, we find that defendant was justified in leaving the marital abode on July 1, 1964, and his leaving did not toll the running of the two-year desertion period. Therefore, the trial court properly determined that defendant was entitled to a divorce on the ground of desertion predicated upon plaintiff's unjustified and willful refusal to have sexual relations with him for the two-year period from July 1, 1963 to July 1, 1965. Likewise, this conclusion merited the dismissal of plaintiff's action for separate maintenance.
We have considered all the other points raised by plaintiff on her appeal and by defendant on his cross-appeal and find that they all lack merit. We conclude that the trial court did not mistakenly exercise its discretion in making the following orders: a counsel fee of $7500 to plaintiff's present counsel and a fee of $500 to her former counsel; an award of $50 a week for the support and maintenance of *298 each of the two infant children, and directing defendant to pay, among other things, interest, amortization payments, taxes, insurance premium on the home, and the other items set forth in paragraph (f) of the judgment.
Next, we consider the application of plaintiff's counsel for fees on this appeal. They seek $17,000 plus costs in the amount of $6844.69. They have previously received $7500 from defendant in accord with the trial court's mandate. Plaintiff personally paid them an additional $3000 trial fee. They have been awarded an additional $1000 for post-judgments applications which defendant has paid. Also, they have received as appellate fees from plaintiff's friends and relatives the sum of $10,000.
Under all these circumstances, and in the light of the outcome of this appeal, we direct defendant to pay plaintiff's counsel the sum of $3500 on account of appellate fees and $3500 on account of appellate costs. This allowance is made without prejudice to counsels' right to charge plaintiff, in accordance with their agreement with her, such additional reasonable fees as may be warranted by their services on her behalf on this appeal.
Judgment affirmed.